J-A21033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LEO GIBNEY,<br><br>               Appellant<br><br>           v.<br><br>EVOLUTION MARKETING RESEARCH,<br>LLC,<br><br>               Appellee | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 3146 EDA 2014 |

Appeal from the Order entered September 29, 2014,
in the Court of Common Pleas of Montgomery County,
Civil Division, at No(s): 2012-10933

BEFORE:  ALLEN, MUNDY, and FITZGERALD*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 11, 2015**

Leo Gibney ("Appellant") appeals *pro se* from the trial court's order sanctioning him for contempt relative to discovery propounded by Evolution Marketing Research, LLC ("Evolution").  We affirm.

Appellant presents two issues on appeal:

1.  Was proper procedure followed for a contempt finding, both criminal *and* civil, when Appellant, following a rule to show cause why he should not be held in contempt, motioned for clarification and was provided no clarification?  There was no petition for contempt by Evolution.  Was it also unreasonable and an abuse of discretion to immediately imprison Appellant at the September 29, 2014 contempt hearing and argument, without giving Appellant an opportunity to make a $500 sanctions purge payment, even though the contempt order was written in such a way that Appellant could avoid imprisonment by making an immediate payment *prior* to the 90 day sentencing?

*Former Justice specially assigned to the Superior Court.

2. Was [sic] the $500 sanctions (from a previous order), which [Appellant] had to pay to Evolution's lawyers to be released from prison, unreasonable, rooted in error of law?

Appellant's Brief at 4 (emphasis in original).

Initially, we assert our jurisdiction. In ***Rhoades v. Pryce,*** 874 A.2d 148 (Pa. Super. 2005), we expressed:

"An appeal may be taken only from a final order, unless otherwise permitted by rule or statute." *Hoffman v. Knight,* 823 A.2d 202, 205 (Pa. Super. 2003); Pa.R.A.P. 341(a), 42 Pa.C.S.A. Generally, an order finding a party in contempt is interlocutory and not appealable unless it imposes sanctions. *Wolanin v. Hashagen,* 829 A.2d 331, 332 (Pa. Super. 2003). An often litigated issue in this area involves conditional sanction orders. *Id.* Such orders impose a sanction, but also include a purge condition, that is, a means of avoiding the sanction. *Id.*

When a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory. If that were the case, a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid the sums owing as sanctions for contempt. It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order. *Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the alleged contemnor, and no further court order be required before the sanctions take effect.*

*Id.* at 332-333 (emphasis added), *quoting Foulk v. Foulk,* 789 A.2d 254, 258 (Pa. Super. 2001) (*en banc).*

***Rhoades v. Pryce,*** 874 A.2d at 151.

Here, the trial court referenced the appealability of this action. ***See*** Trial Court Opinion, 3/24/15, at 26 n.4, *citing inter alia* ***Stahl v. Redcay,***

897 A.2d 478, 487 n.2 (Pa. Super. 2006) ("The Superior Court has noted in *dicta* 'that under prevailing Pennsylvania law a civil contempt ruling with sanctions involving discovery orders remains interlocutory and not immediately appealable.'"). However, in **Stahl**, our Court, citing a 1987 quashal opinion, nonetheless recognized that "unusual circumstances" may warrant our review of "discovery or sanction orders prior to a final judgment in the main action." **Stahl**, 897 A.2d at 487 n.2 *citing* **Markey v. Marino,** 521 A.2d 942, (Pa. Super. 1987). Based on the factual and procedural history of this action as reflected in the record and set forth in the trial court's opinion, we conclude, as the trial court surmised, that "this matter involves unusual circumstances," such that we will consider Appellant's claims of error. **See** Trial Court Opinion, 3/24/15, at 26 n.4.

In reviewing Appellant's issues, we are mindful that "[o]ur scope of review when considering an appeal from an order holding a party in contempt of court is narrow[.]" **Diamond v. Diamond,** 792 A.2d 597, 600 (Pa. Super. 2002). We recognize that we may only reverse a contempt order "upon a showing of an abuse of discretion." **Id.** Likewise, "[o]ur standard of review of issues concerning sanctions is one of abuse of discretion by the trial court." **Ace American Insurance Company v. Underwriters at Lloyds & Co.**, 939 A.2d 935, 945 (Pa. Super. 2007) (citation omitted). It is well-settled that an abuse of discretion exists only where the trial court's determination overrides or misapplies the law, its judgment is manifestly unreasonable, or the result of partiality, prejudice,

bias, or ill-will. *See Majczyk v. Oesch,* 789 A.2d 717, 720 (Pa. Super. 2001). "Generally, courts are afforded great discretion in fashioning remedies or sanctions for violations of discovery rules and orders." *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary),* 985 A.2d 1259, 1269 (Pa. 2009) (citations omitted).

Mindful of the foregoing, we have considered Appellant's two issues as we examined the certified record and applicable jurisprudence. In doing so, we have determined that Appellant's claims of trial court error lack merit. We further find that The Honorable Thomas P. Rogers, sitting as the trial court, has authored a comprehensive, thorough and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's challenges to trial court's order sanctioning him for contempt, such that further commentary by this Court would be redundant. We therefore adopt Judge Rogers' March 24, 2015 opinion as our own in affirming the September 29, 2014 order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/11/2015

- 4 -

Filed 05/06/2015 Superior Court Eastern District
3146 EDA 2014

# IN THE SUPERIOR COURT OF PENNSYLVANIA
## PHILADELPHIA DISTRICT

---

## No. 3146 EASTERN DISTRICT 2014

---

LEO GIBNEY,

Appellant,

v.

EVOLUTION MARKETING RESEARCH, LLC,

Appellee

---

## INITIAL BRIEF OF APPELLANT

---

On Appeal from Judgment of Sentence by the Court of Common Pleas of Montgomery County entered on September 29, 2014 (Rogers J.) and the Order directing Appellant to pay sanctions to Evolution's attorneys (July 30, 2014, Rogers J.).

---

Leo Gibney
Pro Se
27 E Central Ave
D7
Paoli PA, 19301
Tel: 610-563-0762

Dated: May 7, 2015

# Table of Contents

TABLE OF AUTHORITIES ................................................................................................................. iii

STATEMENT OF JURISDICTION ....................................................................................................... 1

ORDERS/DETERMINATIONS IN QUESTION ................................................................................... 1

STATEMENT OF SCOPE AND STANDARD OF REVIEW ............................................................... 1

STATEMENT OF QUESTIONS INVOLVED ...................................................................................... 4

STATEMENT OF THE CASE ............................................................................................................... 4

FORM OF ACTION AND PROCEDURAL HISTORY OF THE CASE ............................................... 4

STATEMENT OF FACTS ...................................................................................................................... 9

SUMMARY OF ARGUMENT .............................................................................................................. 9

ARGUMENT .......................................................................................................................................... 10

    **I.**   THE TRIAL COURT FAILED TO FOLLOW PROPER PROCEDURE IN A FINDING OF CONTEMPT, COMMINGLED CRIMINAL AND CIVIL CONTEMPT, AND DID NOT GIVE APPELLANT AN OPPORTUNITY TO AVOID IMPRISONMENT BY PAYING $500 TO EVOLUTION'S COUNSEL, BELYING THE WORDING OF THE CONTEMPT ORDER. THERE WAS NEVER A PETITION FOR CONTEMPT BY EVOLUTION. ...... 10

    **II.**   THE TRIAL COURT'S SANCTIONS AGAINST APPELLANT, ORDERING HIM TO PAY $500 TO EVOLUTION'S LAWYERS FOR HIS CONTINUED OBJECTIONS TO PRODUCING DISCOVERY, WERE UNREASONABLE AND AN ABUSE OF DISCRETION ROOTED IN ERROR OF LAW. THE TRIAL COURT SANCTIONED APPELLANT AND COMPELLED HIM TO ANSWER DISCOVERY QUESTIONS WHEN THE TRIAL COURT KNEW AND ACKNOWLEDGED THERE WERE NO MATERIAL FACTS FOR EVOLUTION'S COUNTERCLAIMS. THE TRIAL COURT ALSO SANCTIONED APPELLANT FOR NOT ANSWERING DISCOVERY QUESTIONS THAT WERE TRULY IMPOSSIBLE FOR APPELLANT TO ANSWER. ... 16

CONCLUSION ........................................................................................................................................ 19

CERTIFICATE OF SERVICE……………………………………………………………………………20

APPENDIX WITH INDEX……………………………………………………………………………21

## Table of Authorities

Barrett v. Barrett, 368 A. 2d 616 - Pa: Supreme Court 1977 ...............................................3, 15

COM. EX REL. HEIMBROOK v. Heimbrook, 441 A.  2d 1242 - Pa: Superior Court 1982 ..........1, 2

Crislip v.Harshman, 365 A. 2d 1260 - Pa: Superior Court 1976 ....................................................3

Diamond v. Diamond, 792 A. 2d 597 - Pa: Superior Court 2002 .............................................1, 3

Gunther v. Bolus, 853 A. 2d 1014 - Pa: Superior Court 2004. ....................................1, 2, 13, 15

Lachat v. Hinchliffe, 769 A. 2d 481 - Pa: Superior Court 2001...............................................1, 3

Lachat v. Hinchliffe, 769 A.2d 481, 487  (Pa.Super.2001)...........................................................2

McMahon v McMahon, 706 A. 2d 350 - Pa: Superior Court 1998 ..............................................3

Rhoades v. Pryce, 874 A. 2d 148 - Pa: Superior Court 2005........................................................2

STATEMENT OF JURISDICTION

This is a direct appeal from a final order of the Court of Common Pleas, Montgomery County (2012-10933), finding Appellant in contempt, sentencing Appellant to 90 days imprisonment, and ordering Appellant to pay $500 sanctions to Evolution's lawyers in order to be released from prison. Jurisdiction is founded at 42 Pa.C.S.A. § 742. (see Diamond v. Diamond, 792 A. 2d 597 - Pa: Superior Court 2002)

ORDERS/DETERMINATIONS IN QUESTION

The Order appealed from was entered by the Court of Common Pleas (Rogers J.), on September 29, 2014, sentencing Gibney to 90 days imprisonment for contempt (Dkt #159) and the order directing Gibney to pay $500 sanctions to Evolution's lawyers (Dkt# 133), which Gibney had to pay to be released from prison.

STATEMENT OF SCOPE AND STANDARD OF REVIEW

1. Contempt orders imposing sanctions are reviewable final orders.

   "When a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory. If that were the case, a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid the sums owing as sanctions for contempt. It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order. Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the alleged contemnor, and no further court order be required before the sanctions take effect." See Rhoades v. Pryce, 874 A. 2d 148 - Pa: Superior Court 2005

2. Review centers on abuse of discretion, unreasonableness, and errors of law in the contempt/sanctions orders.

"Our scope of review when considering an appeal from an order holding a party in contempt of court is narrow: We will reverse only upon a showing of an abuse of discretion." See Diamond v. Diamond,792 A.2d 597, 600 (Pa.Super.2002). "The ***court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason***." (emphasis added). See Lachat v. Hinchliffe, 769 A.2d 481, 487 (Pa.Super.2001).

3.  Contemnors should be given an opportunity to make an immediate payment to purge contempt and avoid imprisonment, which was not done in the instant case, despite the wording of the contempt order to the contrary.

"While a coercive sentence is wholly appropriate in this case, the record does not support, and the trial court did not find, ***a present ability on the part of appellant to purge himself by making an immediate payment of $250.00***. Consequently, the sentence appears to be punitive and not coercive." (emphasis added) See COM. EX REL. HEIMBROOK v. Heimbrook, 441 A. 2d 1242 - Pa: Superior Court 1982

"The typical sanction for civil contempt is remedial in nature. For example, a court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. It is also common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period." Gunther v. Bolus, 853 A. 2d 1014 - Pa: Superior Court 2004.

4.  Civil vs criminal contempt must not be "commingled," as was done here, as the two have different procedural standards.

"In determining whether a contempt proceeding is criminal or civil, a court must look to whether its dominant purpose is to punish for the violation of a court order or to coerce the contemnor into compliance with the order. It is well-settled that where the dominant purpose of the contempt proceeding is to aid a private litigant or interest rather than to vindicate the authority of the court or to protect the public interest, the contempt is civil…. ***Furthermore, it is clear that even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled.***" See Barrett v. Barrett, 368 A. 2d 616 - Pa: Supreme Court 1977

The trial court erred in not following the "5 step" and other proper procedures in a finding for

contempt.  (See Lachat v. Hinchliffe, 769 A. 2d 481 - Pa: Superior Court 2001, McMahon v

2

McMahon, 706 A. 2d 350 - Pa: Superior Court 1998, <u>Crislip v.Harshman</u>, 365 A. 2d 1260 - Pa:

Superior Court 1976.).

STATEMENT OF QUESTIONS INVOLVED

1. Was proper procedure followed for a contempt finding, both criminal *and* civil, when Appellant, following a rule to show cause why he should not be held in contempt, motioned for clarification and was provided no clarification?  There was no petition for contempt by Evolution. Was it also unreasonable and an abuse of discretion to immediately imprison Appellant at the September 29, 2014 contempt hearing and argument, without giving Appellant an opportunity to make a $500 sanctions purge payment, even though the contempt order was written in such a way that Appellant could avoid imprisonment by making an immediate payment *prior* to the 90 day sentencing?

2. Was the $500 sanctions (from a previous order), which Gibney had to pay to Evolution's lawyers to be released from prison, unreasonable, rooted in error of law?

STATEMENT OF THE CASE

This is an appeal from the order (Dkt# 159) of the trial court finding Gibney in contempt, sentencing him to 90 days imprisonment and requiring him to pay $500 sanctions to Evolution's attorneys, from a previous order, in order to be released.

FORM OF ACTION AND PROCEDURAL HISTORY OF THE CASE

1. Appellant initiated this action in May 2012 with a wrongful termination suit against Evolution Marketing Research, LLC ("Evolution").  He alleges he was wrongfully terminated in violation of public policy for refusing to engage in a planned fraudulent billing scheme against Merck & Co., Inc.

4

2. Evolution filed preliminary objections, which were overruled. It was ordered to answer the complaint.

3. Evolution answered On October 11, 2012 (Dkt# 21) and also filed six counterclaims against Appellant: defamation, commercial disparagement, conversion, tortious interference with existing contracts, tortious interference with prospective contracts, and misappropriation of trade secrets. Gibney answered and denied all counterclaims.

4. Gibney seeks to subpoena Merck witnesses who should be supporting Evolution's counterclaims, if they had merit. Evolution objects and seeks to quash. Eventually, on December 4, 2013, after more than six months and a letter to the trial court from Appellant, two of the motions to quash were granted and two denied.

5. Appellant motions to amend complaint to include an abuse of process counterclaim against Evolution with respect to its counterclaims.(Dkt # 75, April 18, 2013) Appellant argues they are meritless and brought forth for an improper purpose. Appellant properly pleads the three components of abuse of process. Evolution objects to the proposed amendment. The trial court grants Appellant's motion to amend.

6. Appellant motions for summary judgment on Evolution's counterclaims, clearly demonstrating the absence of material facts and evidence (Dkt # 96, August 14, 2013).

7. The trial court denies the MSJ as "premature." The trial court, citing summary judgment rule 1035.2 with respect to discovery relevant to the motion, opines that the time to dismiss claims due to lack of specificity and material facts is with preliminary objections. The trial court further opines that if Appellant does not like the fact that Evolution objects to producing evidence/material facts for its counterclaims during discovery, Appellant must motion, presumably successfully, to compel Evolution to produce material facts of wrongdoing by Gibney and not motion for summary judgment.(Dkt# 114, December 13, 2013). This is court-ordered masochism.

8. Gibney motions for reconsideration (Dkt # 117) pointing out the error of law with respect to summary judgment and material facts. Gibney calls-out how Evolution objected to producing, as just one example, evidence of tortious interference by Gibney, stating also in the record that any such evidence is "not available." Evolution objected to producing evidence of harm and loss for all of its counterclaims. The trial court denied the motion for reconsideration without opinion. (Dkt # 122, January 28, 2014).

9. Evolution motions for sanctions against Gibney for objecting to producing discovery with respect to its counterclaims. Gibney continues to object due to the complete absence of any evidence, which the trial court is aware of and acknowledged in its opinion denying Gibney's MSJ. Gibney continues to object, making the same argument about the absence of evidence. Eventually, Gibney is sanctioned and is ordered to pay $500 to Evolution's lawyers. (Dkt #133, May 19, 2014). Notably, the trial court continues to deny Evolution summary judgment on its counterclaims due to Gibney's continues objections and their multiple motion filing. The trial court is aware that Evolution has produced no evidence.

6

10. After a third motion for sanctions, Gibney is ordered to pay the previous $500 sanctions to Evolution's lawyers by August 8, 2014. The court has, at this point, accepted Appellant's responses to discovery requests. (Dkt # 140, July 30, 2014)

11. Appellant sent a letter to J Rogers asking for postponement of payment of the sanctions until a final order has been rendered, or to reconsider and vacate the sanctions order. The trial court dockets the letter as a motion for reconsideration on the sanctions and denies it (Dkt # 141, August 11, 2014, attached).

12. Two weeks after denying the above reconsideration motion, August 25, 2014, the trial court sets a rule return date of September 15, 2014 for Appellant to show cause why Appellant should not be held in *criminal* contempt ("to vindicate the authority of the court"). (Dkt # 145). There were no intervening motions by Evolution for contempt.

13. Appellant motions for clarification (Dkt # 151, September 15, 2014), as the rule order is unclear about what specifically Appellant had done to warrant the threatened criminal contempt. Appellant had responded to discovery requests and the court accepted the responses, as stated in this motion. There were no motions for contempt by Evolution.

14. The trial court responds the next day (Dkt # 154) by referring to the previous sanctions order, but does not clarify or state for the record what Gibney had done that is criminally contemptible, instead ordering that a hearing and argument "if necessary" will be held on September 29, 2014.

7

*15.* The hearing and argument occur on September 29, 2014, with the record still unclear about what specifically Gibney had done to warrant criminal contempt. Argument takes place, rehashing the same issues of lack of material facts and Gibney's objections to producing discovery (which, by this point, Gibney has produced, as noted in the motion for clarification, Dkt# 151) and why sanctions are an abuse of discretion. ***The trial court never asked Appellant a single question, for the record, during the September 29 hearing/argument, including whether he did pay or would pay the $500 sanctions.***

16. At the end of the argument, the trial court read from the bench. Multiple court officer have entered the room. As soon as the trial court utters the word "imprisonment" in the finding of contempt, Gibney is surrounded by court officers, ordering him to stand up, hold hands together, etc., while the trial court is still reading the order from the bench. Gibney is never given an opportunity to purge the contempt (whether civil or criminal or both is unclear as the two are inappropriately commingled) and avoid imprisonment by paying $500 to Evolution's lawyers, despite the wording of the order to the contrary. Gibney is taken to prison from the courthouse and was not able to make a phone call for 24 hours to try to secure his release from prison.

17. This timely appeal followed on October 8, 2014.

## STATEMENT OF FACTS

Since the relevant facts are procedural, for ease of review, they are discussed in the body of this Brief.

## SUMMARY OF ARGUMENT

The trial court abused its discretion and did not follow proper procedure in finding Appellant in contempt, sentencing him to 90 days imprisonment, and requiring him to pay $500 to Evolution's lawyers from a previous order imposing sanctions (Dkt # 159).

The trial court ordered appellant to show cause why he should not be held in *criminal* contempt (Dkt# 145). Appellant motioned for clarification to understand specifically why he would be held in contempt, i.e., what Gibney did or did not do that would warrant this threatened contempt (Dkt#151). The trial court responded to the motion for clarification (Dkt # 154), but did not clarify, nor deny the motion, instead scheduling a hearing and argument for September 29, 2014.

*There was never a petition for contempt by Evolution*.

On September 29, 2014 the hearing was held. At the end of the hearing/argument, the trial court read from the bench. The trial court found Gibney in contempt—both criminal and civil (improper commingling)-- and Gibney was immediately handcuffed—*while the court was still reading the order from the bench*-- and taken from the courtroom. Gibney was given no chance to avoid imprisonment, despite the wording of the contempt finding and order (Dkt #159), which explicitly stated that Gibney could purge the contempt and avoid imprisonment if he paid Evolution's lawyers $500, prior to the 90 day prison sentence. A transcript from the hearing reveals that the trial court read this from the bench. *However*, Gibney did not hear it because he was *simultaneously* obeying orders from court room guards ("stand up," "put your hands together," etc.) while the trial

9

court was reading from the bench. The trial court never ordered the guards to stop handcuffing and talking to Gibney so he could hear what he was reading. *The trial court never asked Gibney a single question during the hearing resulting in the contempt finding and immediate imprisonment.* The order was hand delivered to Gibney while being held in a retaining cell awaiting transport to prison. Gibney read it, saw that it stated he could purge the contempt and avoid prison by paying the $500 sanctions. He approached the guards retaining him who simply shrugged their shoulders and said there was nothing they could do about it. Two hours later, Gibney was handcuffed, placed in chains around his waist and ankles and transported to prison. Gibney was not permitted to make a phone call for 24 hours to tell someone where he was and to try to get the $500 to Evolution's lawyers.

As Gibney had to pay $500 to Evolution's counsel from a previous sanctions order to be released from prison and purge the contempt, that sanctions order is now appealable. The $500 sanctions was unreasonable and an abuse of discretion, rooted in the misapplication of the law. The sanctions stemmed from Gibney's objections to providing discovery with respect to Evolution's counterclaims, ***when the trial court was aware of—and acknowledged—that there were no material facts for Evolution's counterclaims against Gibney***. The sanctions were also unreasonable because the trial court ***compelled Gibney to answer questions that were truly impossible for Gibney to answer***, strongly suggesting that the trial court never read Evolution's discovery requests, or Gibney's responses, despite multiple oral arguments on the matter stemming from multiple motions to compel and for sanctions.

ARGUMENT

I.    THE TRIAL COURT FAILED TO FOLLOW PROPER PROCEDURE IN A FINDING OF CONTEMPT, COMMINGLED CRIMINAL AND CIVIL CONTEMPT, AND DID NOT GIVE APPELLANT AN OPPORTUNITY TO AVOID IMPRISONMENT BY PAYING $500 TO EVOLUTION'S COUNSEL,

10

BELYING THE WORDING OF THE CONTEMPT ORDER. THERE WAS NEVER A PETITION FOR CONTEMPT BY EVOLUTION.

On August 25, 2014, the trial court issued an order to Appellant to show cause why he should not be held in *criminal* ("vindicate the authority of the Court") contempt (Dkt# 145). Appellant motioned for clarification to understand specifically why he would be held in contempt, i.e., what Gibney did or did not do that would warrant this threatened criminal contempt (Dkt#151). A review of the record will reveal it is unclear.

The trial court responded to the motion for clarification (Dkt # 154), but did not clarify, nor deny the motion, instead scheduling a hearing and argument for September 29, 2014, referencing a previous $500 sanctions order. ***At no time was there a petition for contempt, or any other motion, by Evolution***.

On September 29, 2014 the hearing was held, presumably to argue why Appellant should or should not be held in criminal contempt. A transcript of the September 29 hearing demonstrates that most of the time was spent arguing Gibney's previous motion for summary judgment and the absence of material facts for Evolution's counterclaims, and Gibney's objections to producing discovery for Evolution's counterclaims when the trial court was aware of *and acknowledged* the absence of material facts (discussed below with respect to the $500 sanctions).

The trial court never asked Gibney, for the record, if he paid $500 to Evolution's counsel from a prior sanctions order or if he would. There was never a petition for contempt. On page 32 of J Rogers opinion, he acknowledges he never asked Gibney, stating the following:

> "In addition, and contrary to his contention otherwise, there was no reason to ask Dr. Gibney whether he had paid the five hundred dollar sanction when Counsel for Evolution made it clear that he had not received it."

Thus, according to the trial court, there is no reason to ask someone he is about to imprison,

for the record, if they obeyed an order or not, or give them one more chance to do so to purge the contempt and avoid imprisonment (despite the wording of the order finding Gibney in contempt, which belies this). Instead, the word of opposing counsel, who never petitioned for contempt in the first place, is sufficient. Reviewing the transcript of the September 29, 2014 hearing and argument, this Superior Court will note that *the trial court never asked Appellant a single question during the hearing, prior to sentencing Appellant to prison.*

At the end of the hearing/argument, the trial court read from the bench. The trial court found Gibney in contempt—both criminal and civil (improper commingling)-- and Gibney *was immediately handcuffed—while the court was still reading the order from the bench*-- and taken from the courtroom. Gibney was given no chance to avoid imprisonment, despite the wording of the contempt finding and order (Dkt #159), which explicitly stated that Gibney could purge the just announced contempt finding and avoid imprisonment if he paid Evolution's lawyers $500, *prior* to the 90 day prison sentence. A transcript from the hearing reveals that the trial court read this from the bench.

However, Gibney did not hear it, because, as soon as the word "imprisonment" was read, he was *immediately surrounded* by court officers, obeying orders from them ("*stand up," "put your hands together," "I don't know what's wrong with these handcuffs*, etc.) while the trial court was reading from the bench. *The trial court never ordered the guards to stop talking and handcuffing Gibney so he could hear what Rogers was reading from the bench. The entire scene was prearranged and the trial court never intended to give Gibney an opportunity to purge the contempt and avoid prison, despite the contempt order, deceptively written to appear that Gibney could avoid imprisonment by paying Evolution's lawyers $500 immediately.* On page 27 of his opinion, the trial court cites applicable law about giving the contemnor an opportunity to purge the contempt and avoid imprisonment. However, Judge Rogers utterly avoids discussing the fact that he himself did not do

12

so. See <u>Gunther v. Bolus</u>, 853 A. 2d 1014 - Pa: Superior Court 2004.

The contempt order was later hand delivered to Gibney while being held in a retaining cell awaiting transport to prison. Gibney read it, saw that it stated he could avoid prison by paying the $500 sanctions. He approached the guards retaining him who simply shrugged their shoulders and said there was nothing they could do about it. Gibney had no cell phone, as all of his possession were taken, and was not permitted to make a phone call. Two hours later, Gibney was handcuffed, placed in chains around his waist, chained and shackled around his ankles and transported to prison. Gibney was not permitted to make a phone call for 24 hours—to his lawyer, family member, or employer-- to tell someone where he was and to try to get the $500 to Evolution's lawyers.

The trial court erred in not following the 5 step procedure for a contempt finding and in commingling criminal and civil contempt. As noted, the August 25, 2014 order to Gibney to show cause also threatened criminal contempt ("to vindicate the authority of the court."). Below is from the transcript of the September 29 hearing finding Gibney in contempt.

**Gibney vs. Evolution Marketing Research, LLC** 29

Court's Orders, which have been done in bad faith, and for a clear and unmistakable purpose of undermining the authority of this Court. I find him in contempt of those Orders, and an Order will now be entered to vindicate the authority of this Court, and the Order will go as follows:

And now this 29th day of September, 2014, the Court having set a Rule Return Date and Hearing to Show Cause as to why Leo Gibney should not be held in contempt of this Court's Orders directing Leo Gibney to pay counsel fees and costs to Evolution Marketing Research, LLC's Counsel, in the amount of $500.00 for the filing of the second Motion for Sanctions, and the Court now having provided a hearing on Monday, September 29, 2014, it is hereby ordered that Leo Gibney is held in contempt of court.

Leo Gibney shall serve a period of imprisonment for a period of 90 days forthwith, at the Montgomery County Correctional Facility, unless Leo Gibney purges that contempt prior to the 90-day period of imprisonment, by providing payment in the amount of $500.00 to Evolution Marketing Research, LLC's Counsel, as directed by the Court's

The trial court never stated for the record, prior to the September 29, 2014 hearing, what specifically Gibney had done to warrant the threatened *criminal* contempt. There was no petition for contempt by Evolution. As stated, the trial court also commingled criminal and civil contempt and, with respect to the latter, never gave Gibney an opportunity to purge the contempt and avoid imprisonment. Below is relevant case law on not commingling civil and criminal contempt and in providing contemnor with an opportunity to purge the contempt and avoid imprisonment.

"In determining whether a contempt proceeding is criminal or civil, a court must look to whether its dominant purpose is to punish for the violation of a court order or to coerce the contemnor into compliance with the order. It is well-settled that where the dominant purpose of the contempt proceeding is to aid a private litigant or interest rather than to vindicate the authority of the court or to protect the public interest, the contempt is civil…. *Furthermore, it is clear that even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled.*" (emphasis added) See <u>Barrett v. Barrett</u>, 368 A. 2d 616 - Pa: Supreme Court 1977

"The distinction between criminal and civil contempt is crucial as the due process provided differs significantly. However, there is nothing inherent in a particular contemptuous act that classifies such act as either criminal or civil contempt. Rather, the distinction between the two is the court's dominant purpose in using the contempt power. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained . See <u>Lachat v. Hinchcliffe</u>, 769 A.2d 481, 487 (Pa.Super.2001).

"The typical sanction for civil contempt is remedial in nature. For example, a court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. *It is also common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period.*" (emphasis added) <u>Gunther v. Bolus</u>, 853 A. 2d 1014 - Pa: Superior Court 2004.(Cited by J Rogers, p.27 of opinion)

15

II.   THE TRIAL COURT'S SANCTIONS AGAINST APPELLANT, ORDERING HIM TO PAY $500 TO EVOLUTION'S LAWYERS FOR HIS CONTINUED OBJECTIONS TO PRODUCING DISCOVERY, WERE UNREASONABLE AND AN ABUSE OF DISCRETION ROOTED IN ERROR OF LAW.  THE TRIAL COURT SANCTIONED GIBNEY AND COMPELLED HIM TO ANSWER DISCOVERY QUESTIONS WHEN THE TRIAL COURT KNEW AND ACKNOWLEDGED THERE WERE NO MATERIAL FACTS FOR EVOLUTION'S COUNTERCLAIMS.  HE ALSO SANCTIONED GIBNEY FOR NOT ANSWERING DISCOVERY QUESTIONS THAT WERE TRULY IMPOSSIBLE FOR GIBNEY TO ANSWER.
.

Gibney was sanctioned $500 previously for his objections to producing discovery for Evolution's counterclaims (Dkt # 133), but was not found in contempt, rendering the sanctions interlocutory and not appealable.

Gibney had previously motioned for summary judgment on all of Evolution's counterclaims (Dkt#96) citing and demonstrating the complete lack of material facts.[1] *The trial court agreed there were no material facts, but ruled that the time for demonstrating lack of specificity and material facts is with preliminary objections.*  He therefore denied Gibney's MSJ as "premature." (Dkt # 114). Below is the trial court's brief opinion denying Gibney's MSJ. The Court will note that the trial court cites 1035.2 regarding summary judgment based on "discovery relevant to the motion," but denies Gibney's MSJ because he did not file preliminary objections.  It is an utterly confusing opinion that is disconnected from the summary judgment rule.  Gibney motioned for reconsideration (Dkt# 117), but it was denied without opinion.  It is important to note that the trial court discusses all of this in the opinion supporting contempt.

---

[1] Judge Rogers' opinion in support of his contempt ruling spends significant time on Gibney's argument about summary judgment and material facts.  On page 15 of the opinion, Judge Rogers himself calls-out a dialogue with Gibney during oral argument wherein Gibney asked Judge Rogers if he had seen any contract with which Gibney allegedly tortiously interfered (Evolution submitted no contracts).  As seen, Judge Rogers thought it was inappropriate, stating that Gibney had to "prove his case." Also, on page 7 of his opinion, Judge Rogers refers to Gibney's argument in his motion for reconsideration (Dkt # 117) about summary judgment due to the absence of material facts as "novel." Judge Rogers disagrees with the law that a motion for summary judgment can be brought at any time, based on the record as it then stands.

[1] *See* Pa.R.C.P. 1035.2(2). The proper procedure to object to a complaint, including counterclaims, on the basis of specificity is by the filing of preliminary objections. *See Connor v. Allegheny General Hospital*, 501 Pa. 306, 311 n.3, 461 A.2d 600, 602 n.3 (1983). The proper procedure to object to discovery responses, or the lack thereof, is by the filing of a motion to compel. *See* Pa.R.C.P. 4019.

In other words, the trial court ruled that it was too late for Gibney to demonstrate the lack of material facts for Evolution's counterclaims. Therefore, Gibney must produce discovery for counterclaims such as tortious interference with existing contracts, even though *the record at the time* Gibney motioned for summary judgment revealed that Evolution both objected to providing any material facts for this claim, and candidly admitted that any such evidence was "*not available.*" Evolution argued, and the trial court agreed, that Evolution had no material facts because Gibney, the *defendant* on the counterclaims, who does not bear the burden of proof at trial, would not first produce discovery so Evolution could see if he in fact tortiously interfered. This set in motion multiple motions to compel and for sanction by Evolution. Gibney continued to object to the proceedings when the trial court knew there were no material facts, via its opinion (above) denying Appellant's MSJ on Evolution's counterclaims. He was ultimately sanctioned. Notably, Evolution also motioned for summary judgment on its counterclaims due to Gibney's repeated objections to producing discovery. The trial court always denied it because the court knew there were no material facts for the claims.

In his order denying Gibney's MSJ and motion for reconsideration, the trial court opined (above) that *Gibney must compel Evolution to produce material facts for their counterclaims*, not motion for summary judgment, if, during discovery, Evolution objects or states that material facts for their claims are not available. In other words, according to the trial court, if Evolution refuses to produce evidence of wrongful conduct by Gibney, which should be good news for Gibney, Gibney

17

must make them and not ask the court to dismiss their claims. This is court-ordered masochism.[2]

The trial court was aware of the complete lack of evidence for Evolution's counterclaims when he sanctioned Gibney $500 for his continued objections to producing discovery for Evolution's counterclaims. Gibney sent the trial court a letter asking for postponement and/or reconsideration of the sanctions (deemed a motion for reconsideration, Dkt #141, also attached[3]), which was denied. Therefore, Gibney believes this $500 sanctions was unreasonable, based on a misapplication of the law, and an abuse of discretion.[4]

Finally, not only did the trial court sanction Gibney for objecting to producing discovery for claims the court knew were meritless, the court also compelled Gibney to answer discovery requests that were truly impossible for Gibney to answer. Below is just one example of Evolution's harassing discovery requests. ***Gibney's answer, below, was read into the record before the trial court during oral argument for Evolution's motion to compel and for sanctions***. Gibney separated from Evolution in 2011 and truly has no idea who Evolution's clients are and obviously not its "prospective clients." ***The trial court overruled Gibney's objection and again ordered Gibney to answer the question below in his order granting sanctions*** (Dkt # 133). And, again, Appellant respectfully asks this Court to keep in mind that the trial court also knew that Evolution objected to providing material facts for its counterclaims against Gibney, stating, among other things, that information on clients and contracts with which Gibney allegedly tortiously interfered was "not available."

---

[2] All of this is summarized in Gibney's motion for reconsideration of the sanctions (Dkt # 141).

[3] Gibney believes this letter (deemed a motion for reconsideration on the sanctions by Judge Rogers and docketed at 141) provides the best argument for why the $500 sanction was unreasonable and an abuse of discretion rooted in a clear misapplication of the law. It is also attached.

[4] An ironic parallel to all of this is that Judge Rogers granted Gibney, over Evolution's objections, leave to amend his Complaint to include an abuse of process claim against Evolution with respect to its counterclaims, with Gibney properly pleading the three elements of abuse of process. Gibney made the case that the meritless counterclaims were brought forth for an improper purpose.

11.    Identify each and every current, former and/or prospective Client of Evolution with which You or anyone acting on Your behalf has Communicated since the termination of Your Employment on November 7, 2011. Additionally, Identify the date of such Communication, the individuals involved in the Communication, the form of the Communication (oral, written or electronic), and all Documents describing or otherwise Related to such Communication.

**RESPONSE:**

This is absurd. Who are Evolution's clients and "prospective clients" and how is Gibney supposed to know this? He separated from Evolution in 2011.

Gibney incorporates the Global Objection above.

Below, Gibney cites again Evolution's response to a discovery request from Gibney with regard to its claim that Gibney tortuously interfered with existing and prospective contractual relations, presumably the basis for this question. **This is gamesmanship by Evolution and provides further support for Gibney's abuse of process against Evolution. This abusive and harassing process simply cannot stand. Evolution's counterclaims should have been dismissed after Gibney's MSJ on the counterclaims. If and when it is necessary, Gibney looks forward to an appellate court review of this abuse of process. Rule 1035 and the PA Supreme Court ruling in Ertel, noted above and in the Motion for Reconsideration, provide ample support for Gibney's refusal to engage in this unfair and harassing discovery process.**

Evolution, below, states it "does not have this information at present." Apparently this response was insufficient for Gibney to prevail in his MSJ on Evolution's counterclaims, due to lack of material facts. Yet, Gibney has been ordered to respond to this interrogatory. See Ertel.

## CONCLUSION

For all of above reasons, this Court should vacate the trial court's orders finding Gibney in contempt and sanctioning him $500 and all other relief as justice requires, including dismissing Evolution's counterclaims against Gibney.

Respectfully submitted,

Leo Gibney, Pro se

19

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Initial Brief of Appellant was served by electronic mail upon the following person:

Dennis Mulgrew, Esq.
Drinker Biddle & Reath, LLP
One Logan Square, Ste 2000
Philadelphia, PA 19103
Dennis.Mulgrew@dbr.com

Dated: May 6, 2015

Leo Gibney

# APPENDIX INDEX

1. Opinion of trial court

2. Statement of matters complained of on appeal

3. Order directing Appellant to show cause why he should not be held in criminal contempt

4. Appellant's motion for clarification on above order

5. Order finding Appellant in contempt

6. Letter to J Rogers requesting postponement of sanctions or reconsideration of sanctions. Docketed as a motion for reconsideration by trial court and denied (Dkt # 14

THE COURT OF COMMON PLEAS
PENNSYLV.
CIVIL ACT



2012-10933-0197  3/24/2015 11:07 AM  # 10229654
Opinion
Rcpt#Z2361571  Fee:S0.00
Mark Levy - MontCo Prothonotary

LEO GIBNEY : SUPERIOR COURT
: NO. 3146 EDA 2014
v. :
:
EVOLUTION MARKETING : TRIAL COURT
RESEARCH, LLC : NO. 2012-10933

ROGERS, J.                                    **MARCH 24, 2015**

### *OPINION*

## I.  INTRODUCTION

Appellant Leo Gibney ("Dr. Gibney") has appealed *pro se* to the Superior Court of Pennsylvania ("Superior Court") from this court's order dated and docketed on September 29, 2014, finding Dr. Gibney in contempt of court. The undersigned respectfully requests that the Superior Court affirm the September 29, 2014 order for the reasons set forth below.

## II.  FACTUAL AND PROCEDURAL HISTORY

The relevant facts and torturous procedural history underlying this appeal are as follows. Dr. Gibney filed a complaint on May 1, 2012,

against his former employer, Appellee Evolution Marketing Research, LLC ("Evolution"), alleging wrongful termination. Evolution filed preliminary objections on May 21, 2012, which this court overruled after hearing oral argument by order dated September 21, 2012. Evolution filed an answer with new matter and counterclaims on October 11, 2012. Evolution alleged defamation, commercial disparagement, tortious interference with existing contractual relations, tortious interference with prospective contractual relations, misappropriation of trade secrets and conversion. Evolution sought compensatory, consequential as well as punitive damages, plus attorney fees and injunctive relief. (Answer of Defendant Evolution Marketing Research, LLC with New Matter and Counterclaims, filed 10/11/12, at Dkt. No. 21). Dr. Gibney did not file preliminary objections to the counterclaims. Instead, on October 17, 2012, Dr. Gibney filed an answer to Evolution's new matter and counterclaims asking the court to dismiss "the hopelessly vague and redundant Counterclaims in their entirety". (Answer of Plaintiff to New Matter and Counterclaims of Defendant Evolution Marketing Research, LLC, filed 10/17/12, at p. 17).

On February 13, 2013, Dr. Gibney filed a document entitled Motion for Summary Judgment and Memorandum of Law in Support of Motion. The motion sought summary judgment on Dr. Gibney's wrongful termination claim based upon his assertion and belief that officers of Evolution had made multiple false statements under oath. (Motion, filed

2

2/13/13, at Dkt. No. 57). Dr. Gibney did not provide the court with a memorandum of law or cite to a single statute, case or rule. (*See id.*). On February 21, 2013, Evolution filed a motion to compel Dr. Gibney's responses to its interrogatories and document requests served on December 21, 2012. In what would become a familiar refrain, Evolution claimed Dr. Gibney "refused to provide any substantive response to some of the most basic and relevant interrogatories ... [and] refused to produce (or even identify...) a *single* document in response". (Motion to Compel, filed 2/21/13, at ¶¶ 4-10) (emphasis in original). On March 15, 2013, Evolution filed their opposition to Dr. Gibney's motion for summary judgment on his wrongful termination claim and a cross-motion on that claim. Recognizing the existence of issues of fact and challenges to credibility, Dr. Gibney responded that Evolution's cross-motion should be denied. (Gibney's Answer to Evolution's Cross-Motion, filed 3/18/13).

On June 28, 2013, the undersigned granted Evolution's motion to compel responses to interrogatories and document requests. The court's order directed Dr. Gibney to "provide full, complete and verified Answers to the Interrogatories" and "full and complete Responses of Documents" and "specifically to those deficiencies identified in [Evolution's] Counsel's February 11, 2013 correspondence to [Dr. Gibney]." (order docketed 6/28/13).

Following argument on July 1, 2013, and upon review of the record, this court denied both Dr. Gibney's motion and Evolution's cross-motion for summary judgment on July 11, 2013. Also on July 11, 2013, the undersigned granted Dr. Gibney's motion to amend his answer to Evolution's counterclaims with a counterclaim by Dr. Gibney alleging abuse of process. Dr. Gibney filed this motion on April 18, 2013. On August 14, 2013, Dr. Gibney filed a motion for summary judgment on Evolution's counterclaims. Evolution responded on September 13, 2013. On the same day, Evolution filed its first motion for sanctions against Dr. Gibney as a result of his refusal to comply with this court's June 28, 2013 order granting Evolution's motion to compel. On December 11, 2013, the court held a hearing on Evolution's first motion for sanctions. The undersigned prefaced the hearing as follows:

> Perhaps a brief explanation is in order. We just completed a motion for summary judgment [argument], which was not a matter of record, and now we have a court reporter here. The reason for that is I treat all motions for sanctions as a record proceeding, because it could go to the next stage of contempt if I rule that in that direction after considering everything. I always want a matter of record beforehand, because I treat orders of the Court not as being [precatory], but obligatory.

(Notes of Testimony Hearing ("N.T.") Re: Motion for Sanctions, 12/11/13, at p. 2). Later in the proceeding, the following exchange occurred:

MR. GIBNEY: Thank you, Your Honor.

If I could just note at the beginning that obviously, since this is a motion for sanctions, it's obviously a serious matter.

4

THE COURT:     It's very serious with me. I've been told that if you go on Google, there's people in there that have been incarcerated by me who say what they feel about that. So I take this very seriously, a sanctions motion.

As I said, when I was a lawyer and now as a judge, orders are supposed to be followed.

MR. GIBNEY:     Yes, sir.

(*Id.* at 17).

A sample of reasons for Dr. Gibney's refusal to provide responses to

discovery includes:

MR. GIBNEY:     I'm sorry.

This is part of my response to Interrogatory No. 1, letter D.

"When Gibney requested that Evolution provide material facts related to his counterclaims as required by law, Evolution refused."

We've already gone through that with my motion. And I think that my motion for summary judgment, to the extent that the Court agrees at some level with me, then the Court will see that there's significant overlap here, because **I am refusing and objecting to provide information when I have no idea why they want it**.

That's the overriding theme of my objections: Why do they want this? What is the claim or claims that are at issue here for why you want this information?

\*     \*     \*     \*

That's my response. And then I cite Pennsylvania Rules of Civil Procedure 1019(a), requires fact pleading. The **purpose of 1019 is to require the pleader to disclose the**, quote, **material facts sufficient to enable the adverse party to prepare his case**.

THE COURT: Well, respectfully, that 1019 applies to the attachment of documents to a complaint.

\* \* \* \*

"Gibney is not aware of any documents that Evolution does not already have. **Evolution must specify which counterclaims it is referring and state the material facts supporting the counterclaim.** Gibney incorporates all the objections noted in responses to interrogatories regarding Evolution's failure to provide the specificity and material facts."

So I'm objecting. With objecting, I'm saying I'm not aware of any documents that Evolution does not have.

\* \* \* \*

"Objection: Overly broad and vague, beyond the scope of discovery, is not reasonably calculated to lead to the discovery of admissible evidence. What is the claim here and what is the basis for that claim? Not waiving the objection, Gibney has no hard copy of any such documents and has never shared any such documents with any third party."

So -- and if I had them --

THE COURT: So you're telling me that you don't have that?

MR. GIBNEY: I don't have hard copy of anything.

THE COURT: Well, that's a different statement.

(*Id.* at 23, 37, 55 and 62-63) (emphasis added).

On December 16, 2013, the court issued an order denying Dr. Gibney's motion for summary judgment on Evolution's counterclaims as premature. On December 20, 2013, the court issued a detailed order, docketed on December 23, 2013, which directed Dr. Gibney to provide

6

complete and verified answers and responses to specific interrogatories and requests in accordance with the Pennsylvania Rules of Civil Procedure within thirty (30) days. The order also provided as follows:

> At the time of Argument, the Court made it explicitly clear to both [Dr. Gibney] and Defense Counsel that the conduct displayed in this process thus far is unacceptable. The Court has now explained to [Dr. Gibney] what is expected in response to discovery requests and the actions by Defense Counsel at times have been unacceptable "gamesmanship". The Undersigned has no objection, and it has demonstrated in the past, in other matters, to impose Sanctions, Contempt and if necessary, imprisonment in order to purge the Contempt[.]

(December 20, 2013 order at ¶ 7).

On December 31, 2013, Dr. Gibney filed a "Memorandum of Law in Support of Motion for Reconsideration on the Order Denying Gibney's Motion for Summary Judgment on Evolution's Counterclaims". Therein, Dr. Gibney did not present any new facts or law as required to support reconsideration. Instead, Dr. Gibney presented the novel argument that he was entitled to summary judgment because Evolution had not produced "sufficient material facts to support its counterclaims" before the relevant discovery had been completed. (*Id.* at p. 3). In fact, he proclaimed, "[t]here is no requirement for Gibney to produce discovery." (*Id.*) (emphasis in original). The court denied Dr. Gibney's motion by order on January 28, 2014.

On February 25, 2014, Evolution filed a second motion for sanctions. Prior to filing the motion, Counsel for Evolution attempted to

explain in an email to Dr. Gibney why his reliance on *Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038 (1996), for the refusal to respond to Evolution's discovery requests was misplaced. (Email dated February 4, 2014, Motion for Sanctions filed 2/25/14, Exhibit F). In its motion, Evolution requested dismissal of Dr. Gibney's wrongful termination claim, the entry of default judgment on Evolution's counterclaims and the payment of reasonable costs and fees as sanctions for Dr. Gibney's willful violation of the court's very specific orders. Evolution also reiterated that the court had explicitly warned Dr. Gibney about the imposition of sanctions in two court orders as well as at the discovery management conference on December 30, 2013. (Motion, filed 2/25/14, at p. 9, n.1).

The court conducted a hearing on Evolution's second motion for sanctions on April 17, 2014. At the beginning of the hearing, the undersigned explained as follows:

> THE COURT: What I need you to do for me is -- because if [Dr. Gibney] doesn't satisfy me correctly and I find him in contempt, he's going to jail -- I made it very clear to both of you -- until the contempt is purged. I don't take orders to be [precatory] or optional. They're mandatory. And I have put lawyers in jail and I've put other people in jail who don't get it.
>
> So what you need to do for me is be very clear on exactly what you contend that [Gibney] did not respond to and was therefore in violation of my order.

(N.T. Hearing Re: Sanctions, 4/17/14, at p. 8).

Following the detailed explanation by counsel of what he asserted Dr. Gibney had done or not done to comply with the court's orders, Dr.

8

Gibney was afforded the opportunity to respond. Portions of his argument include:

> MR. GIBNEY:    I complied with your order - - your order said to offer responses that are in compliance with federal -- with Pennsylvania Rules of Civil Procedure. That was the order.
>
> I didn't necessarily -- I did not interpret the order as overruling my objections per se. I interpreted the order, as it said, full and complete responses that are in compliance with Pennsylvania Rules of Civil Procedure.
>
> \*     \*     \*     \*
>
> **I complied by objecting, because I don't know why I have to answer that question.**
>
> \*     \*     \*     \*
>
> Counsel indicated before that basically one of the reasons that they don't know what my defamatory comments were is because I haven't produced any discovery. That is an astounding response.
>
> What was [the] law requires is that because I am the defendant -- I have to emphasize that here. This is their counterclaims against me. I am the defendant. It is their obligation to tell me what defamatory statement or what defamatory writing, which would be libel in that case -- what it was so that I can prepare my case. Here what they are essentially saying is that they don't know what the defamatory statements or remarks are because I haven't produced discovery. That simply is not how the law works.
>
> THE COURT:    I disagree.
>
> \*     \*     \*     \*
>
> So you say that that's complied with my order of December --

9

MR. GIBNEY: My response is in compliance were [with the] Pennsylvania Rules of Civil Procedure.

THE COURT: I disagree.

\* \* \* \*

MR. GIBNEY: As with all of these where I objected, I don't know what claim or counterclaim this applies to.

\* \* \* \*

I have an objection. I refer to the Third Circuit and the Supreme Court decisions and noted my objections to interrogatories pertaining to any counterclaims by Evolution based on nothing more than information and belief and for which there were no material facts.

\* \* \* \*

MR. GIBNEY: Your Honor, my responses to Evolution's interrogatories and document requests are in compliance with Pennsylvania Rules of Civil Procedure.

THE COURT: No, they're not. They're not. And I've read this. I've spent time. You can argue that to me, but they're not, and so you need to understand that. That's what I'm telling you. They're not in compliance with the Pennsylvania Rules of Civil Procedure, Dr. Gibney. You need to know that right now on the record.

MR. GIBNEY: May I continue?

\* \* \* \*

The law requires, Your Honor, that Evolution adduce material facts for its counterclaims. **If there are no or insufficient material facts, the law requires that the counterclaims be dismissed**.

\* \* \* \*

In the absence of material facts for damages, Rule 1035 requires dismissal of Evolution's claims. In addition, the

10

Supreme Court of Pennsylvania in *Ertel v. Patriot News* further explains that **the defendant**, who does not bear the burden of proof at trial, **is not required to produce discovery prior to the plaintiff producing material facts of harm and damages.**

(*Id.* at 40-42, 45, 54-55) (emphasis added).

Dr. Gibney also asked, should the court impose sanctions, that the court explain "what the material facts are supporting Evolution's counterclaims and that for each and every objection [he] articulate[d] to discovery requests, the Court articulate why it is overruling [his] objection and how the discovery sought is relevant to any claim or counterclaim in this action". (*Id.* at 58, 65-66).

On May 16, 2014, the undersigned issued a detailed order finding Dr. Gibney in violation of the court's December 20, 2013 order and explaining why Dr. Gibney's position on discovery was unfounded and incorrect. In addition, the court ordered Dr. Gibney's previous objections stricken, that "[Dr. Gibney] **SHALL** provide specific, complete and verified Answers [and all relevant documents in his possession]... or risk sanctions upon application, including but not limited to dismissal of the wrongful termination claims, a default judgment on the counterclaims as well as an award of reasonable costs and fees". (Order: Motion for Sanctions Against Plaintiff/Counterclaim Defendant Leo Gibney Under Rule 4019, docketed 5/19/14) (emphasis in original). Finally, the court ordered Dr. Gibney "to pay Counsel fees and costs to [Evolution] for the filing of this second

11

Motion for Sanctions in the amount of Five Hundred Dollars ($500.00)". (*Id.* at p. 4). The court granted Dr. Gibney twenty (20) days to comply with the order. (*Id.*).

After unsuccessfully attempting to obtain an answer regarding the court ordered discovery responses and payment of the Five Hundred Dollars ($500.00) from Dr. Gibney by email exchange, Counsel for Evolution filed a third motion for sanctions on June 13, 2014. (Third Motion for Sanctions, filed 6/13/14, Exhibit C). Evolution again sought the dismissal of Dr. Gibney's wrongful termination claim, an entry of default judgment on Evolution's counterclaims and an award of reasonable attorneys' fees and costs. (Motion, filed 6/13/14, at p. 1). Evolution noted that Dr. Gibney was "in contempt of this Court under either the civil or criminal standard, as the orders compelling his responses and the sanctions payment are explicitly clear; his disobedience is willful rather than unintentional; and his own stated reason for not complying with the orders is his denial of the authority of this Court (i.e., his belief that the Court's previous decisions were "wrong.")". (*Id.* at p. 7, n. 3).

The undersigned presided over the hearing on Evolution's third motion for sanctions under Rule 4019 on July 11, 2014. Counsel for Evolution explained their perceived deficiencies in Dr. Gibney's answers

12

and responses supplied on Monday, July 7, 2014. In sum, Counsel argued as follows:

> So, Your Honor, just to summarize, one of two things is going on here: The first -- and I'm pretty positive this is what's going on here -- this is just another version of I'm not producing any discovery to you. I don't like the rules of the court, I don't believe in the rules of the court, and I'm going to follow my own rules. I'm not going to give you anything. ... And whether he tells us directly, I'm not going to produce the documents, as he's done three times and kept doing until this Monday, or whether he just says these false statements that he doesn't know as another way to get the Court off his back or us off his back, it doesn't matter; he's still refusing to participate in discovery.
>
> And at this point, there's no other remedy other than to dismiss his claims and grant a default judgment on our claims.
>
> The only other possible answer, Your Honor, is that he's actually being truthful that he really doesn't know who has knowledge of his claims, that he really can't recall who he talked to about the supposed fraud or his termination -- all these topics that are at the heart of his case, he just really doesn't know. If that's true, then what he's done is highly, highly prejudicial. We answered -- we filed our answer and counterclaims in October of 2012. We served him discovery in December of 2012. His answers were due in January of 2013.
>
> If he really doesn't have the answers to these basic questions now, he certainly had them back in January of '13. And by telling us he's not going to respond, by ignoring the Court's orders, by making up his own discovery rules, by citing federal law that doesn't apply even in federal court and then saying, look, 18 months has passed; guess what, I don't remember anymore, on the most basic and fundamental and critical issues -- that is so prejudicial that that would -- even if it's true...that would warrant dismissal of his claim and a default judgment on our counterclaims anyway, because the information is gone.
>
> *     *     *     *

13

THE COURT: Well, has he had his deposition taken?

MR. WOOLF: We have not been able to take his deposition.

THE COURT: Why not?

MR. WOOLF: Because we didn't have documents, and we didn't want to do it twice, Your Honor.

\* \* \* \*

The only other thing I was going to say, Your Honor -- and he hasn't addressed it -- there's no justification for not paying the sanction that Your Honor ordered, the $500 sanction.

THE COURT: I'll deal with that.

(N.T. Hearing on Evolution's Third Motion for Sanctions, 7/11/14, at 20-23).

On his own behalf, Dr. Gibney cited Evolution's alleged failure to respond to his discovery requests as well as the same argument that Evolution had not produced any material facts in support of its claims. For example, Dr. Gibney responded, in part, as follows:

And note, too, that along the way they point out to documents and things that I didn't request [sic] that they know exist because they have it, which raises the question, then what's the point? **If they've got the document, it's already been submitted, why are they bothering me about it? What's the problem there?**

\* \* \* \*

I'm struggling to do the right thing here, Judge, with respect to the orders against me, the subpoenas and my refusal to produce discovery. I do not want to disrespect this Court but,

candidly, I do demand to be treated fairly, and to this point, I am not.

**The issue is that Evolution's counterclaims against me should have been dismissed as a matter of law.** I submitted a motion for summary judgment followed by a motion for reconsideration, and I demonstrated without question the complete absence of material facts. ... And I would like to ask the Court, because we are on the record and the Court is going to sanction me again, will the Court state whether the Court has seen any contract between Evolution and any third party that I allegedly tortiously interfered with. And I ask the Court to state for the record --

THE COURT: No, you may not. The Court makes determinations. You have to prove your cases.

MR. GIBNEY: Okay. Well --

THE COURT: This is not a dialogue.

MR. GIBNEY: Understood.

THE COURT: This is a court proceeding.

MR. GIBNEY: All right. I appreciate that.

So I will maintain that -- and continue to maintain that there were no material facts for any of their counterclaims against me and that they should have been dismissed as a matter of law. And I will not give up that fight. I'll take it as far as I have to go.

\* \* \* \*

And again, I ask the Court to think about this: We're not here today because of the abuse of process claim against them. It's the issue of does this Court really believe, despite the fact that I have demonstrated that there are no material facts -- after reading this -- I read this internal e-mail between the two Evolution principals. **I again ask this Court, respectfully, to step back, to consider if what I am saying is right, and if it's fair to make me produce these communications to these individuals**, to this company,

15

Apotex, **when there's not a scintilla of evidence that they even know Apotex**. There is nothing.

(*Id.* at 30-32, 42) (emphasis added).

On July 30, 2014, the court issued an order addressing Evolution's third motion for sanctions, which directed in pertinent part as follows:

> 4. On numerous occasions the Court has made it explicitly clear to both [Dr. Gibney] and Defense Counsel that the conduct displayed in this process is unacceptable. Both Parties are on notice that any evidence, whether documents, testimony or thing, not produced in Discovery by September 30, 2014, either in whole or as part of a list **SHALL be PRECLUDED** at any trial in this matter; and
>
> 5. [Dr. Gibney] has until Friday, August 8, 2014, to pay Counsel fees and costs to Defendant in the amount of Five Hundred Dollars ($500.00) pursuant to this Court's May 16, 2014 Order.[4] Failure to do so will result in a **Rule to Show Cause** as to why [Dr. Gibney] should not be held in **Contempt of Court**.
>
> > [4] The check should be made payable to Drinker Biddle & Reath LLP and delivered to the attention of David J. Woolf, Esquire. Counsel is to notify Chambers in writing on Monday, August 11, 2014, if [Dr. Gibney] fails to present the Five Hundred Dollars ($500.00) payment by end of business day on August 8, 2014.

(Order: Evolution's Third Motion for Sanctions, docketed 7/30/14, at pp. 3-4) (emphasis in original).

Dr. Gibney did not deliver a check to Mr. Woolf by Friday, August 8, 2014. Instead, Dr. Gibney sent a letter by regular mail to the undersigned dated and postmarked August 8, 2014, requesting a delay of his payment of the court ordered sanctions until the entry of a final order in the case. The four (4) page letter is replete with Dr. Gibney's reasons why he

16

believes the court is in error, why Dr. Gibney's version of the law is the correct one and why he should not have to abide by the court ordered sanction unless and until he fails on appeal. The undersigned received this letter on Monday, August 11, 2014. On that day, the court issued an order denying Dr. Gibney's request to delay payment and attaching Dr. Gibney's August 8, 2014 letter for the record. (order docketed 8/11/14).

When Dr. Gibney still had not paid the Five Hundred Dollar ($500.00) sanction as of August 25, 2014, the court issued a Rule to Show Cause Order. The order listed a rule return date of September 15, 2014, for Dr. Gibney to file his answer as to why he should not be held in contempt of court, as well as a date two weeks later, September 29, 2014, for argument and hearing, if necessary. (order docketed 8/26/14). In addition, the order notified Dr. Gibney of the possibility of imprisonment should the court find him in contempt, until he purged the contempt, and recommended that he obtain counsel.[1] (*Id.*).

---

[1] Specifically the order provided as follows:

**THE PLAINTIFF IS HEREBY ON NOTICE THAT IF THE COURT FINDS THAT PLAINTIFF IS IN CONTEMPT OF THE ORDER(S), THE COURT WILL TAKE THE APPROPRIATE ACTION TO INSURE THE VINDICATION OF THE AUTHORITY OF THE COURT, WHICH MAY INCLUDE IMPRISONMENT UNTIL SUCH TIME AS THE CONTEMPT IS PURGED. THEREFORE, THE PLAINTIFF IS PLACED ON NOTICE OF THE STRONG RECOMMENDATION TO OBTAIN COUNSEL. IF THE PLAINTIFF CANNOT AFFORD TO HIRE A LAWYER, THE OFFICE LISTED BELOW MAY BE ABLE TO PROVIDE PLAINTIFF WITH INFORMATION ABOUT AGENCIES THAT**

17

Dr. Gibney did not file an answer to the Rule to Show Cause Order by September 15, 2014. Instead, on September 15, 2014, Dr. Gibney filed a "Motion for Clarification on the August 25, 2014 Order". In an order dated September 16, 2014, and docketed on September 17, 2014, the court repeated the clear and unambiguous portion of its July 30, 2014 order directing Dr. Gibney to pay counsel fees and costs in the amount of Five Hundred Dollars ($500.00) pursuant to previous court orders and that failure to comply would result in a Rule to Show Cause. (order docketed 9/17/14). In addition, the court explained that it had issued an order denying Dr. Gibney's request to delay payment. (*Id.*). Therefore, when Dr. Gibney still had not paid the sanction, on August 25, 2014, the court had issued a Rule to Show Cause. Accordingly, the undersigned reminded Dr. Gibney of the argument and hearing, if necessary,[2] previously scheduled for Monday, September 29, 2014, and the possibility of imprisonment should the court find him in contempt of the court's previous orders. (*Id.* at p. 2). Again, the undersigned recommended that Dr. Gibney obtain counsel. (*Id.* at p. 3).

---

**MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

(Order docketed 8/26/14) (emphasis in original).

[2] A hearing on the Rule to Show Cause would not be necessary, for example, if Dr. Gibney were to pay the Five Hundred Dollar ($500.00) sanction prior to the hearing.

18

On September 29, 2014, the undersigned conducted a hearing on the Rule to Show Cause as to why Dr. Gibney should not be held in contempt of this court's orders. Dr. Gibney testified, in part, as follows:

> Your Honor, **I believe that a** Motion for Contempt -- or a **Contempt Order would be an [abuse of] discretion** for the following reasons. As an initial matter, as I indicated to the Court, the Sanctions Order is not appealable because it is interlocutory, and I can't appeal that until there is a final Order. And I believe I -- as I stated to the Court -- **I believe there was no urgency to the $500.00 to Evolution at this point, and they could have waited until a final Order if I did not properly appeal that within the requisite time, then I would pay it.**
>
> More importantly, **I believe that the events leading to this hearing stems from clear errors of law, which will form the basis of my appeal of the sanctions and the Contempt Order.**
>
> As I indicated many times, in motions and to the Court, the Motion for Summary Judgment should have been granted. There is no question of this. The law is clear, "In the absence of material facts, summary judgment shall be granted." The clear wording at [Rule] 1035, and ample Pennsylvania case law, makes this clear.
>
> **Evolution has produced no material facts for their counterclaims against me.** I have amply demonstrated this.
>
> In the Order denying the Motion for Summary Judgment, the Court appears to believe that because I did not file preliminary objections, we must wait for all discovery to take place and that is not what the law says.
>
> \*        \*        \*        \*
>
> The last thing I would say at the moment ... I cited on a couple of occasions Ertel v. Patriot-News Company. The Court has indicated that it is aware of that particular case, it's well known, and I understand that, however, in one of the Orders the Court indicated that I had improperly cited that

case, because it was only applicable, quote, at the summary judgment stage, end quote. **Respectfully, that revealed a misunderstanding of summary judgment and when it can be brought**. Summary judgment can be brought forth at any time. The law is clear on that. In fact, a summary judgment can be based on the pleading alone, before a stick of discovery even takes place. Regardless of whether preliminary objections were filed, whoever filed.

In Ertel -- .... [t]he trial court granted summary judgment based on a pleading alone, no discovery took place.

\*       \*       \*       \*

The point being that not an ounce of discovery took place in that case. It never went beyond the pleadings themselves.

(N.T. Hearing on Contempt Rule to Show Cause, 9/29/14 at 3-4, 8-10)

(emphasis added).

In response, Counsel for Evolution argued in part:

Your Honor has been advising [Dr. Gibney] of sanctions initially since May. Your Honor then ordered him twice on two separate occasions to pay the money. There's no doubt that he hasn't complied. There's no doubt that he was ordered to pay this money. There's no doubt that he hasn't done it. There's simply no basis and Dr. Gibney hasn't offered one today, for not paying it, other than, that he disagrees and he thinks the counterclaims have no merit.

(*Id.* at 12).

After hearing argument from both parties, the undersigned detailed the long procedural history of the discovery dispute and Dr. Gibney's repeated refusals to comply with this court's orders. (*Id.* at 22-28). In closing, the court stated as follows:

[Dr.] Gibney is an individual who is intelligent, articulate and has a Ph.D. This is not a case of an individual

20

who does not understand what these Court Orders direct. This is not a case where there is an inability to pay. There have been references to his other clients -- one today -- that he has been serving. Plus, his request of August 8, 2014, was a request for postponement of payment until, what he clarified, as the "Final Order" in this action.

As I've stated, the $500.00 sanction can be paid to Evolution's law firm for his contempt, and his conduct in causing Evolution's Counsel to file a second Motion for Sanctions. I've not even addressed what should be done on the third Motion for Sanctions.

His conduct, has clearly been one willful and intentional disobedience to the Court's Orders, which have been done in bad faith, and for a clear and unmistakable purpose of undermining the authority of this Court ....

(*Id.* at 28-29).

This court found Dr. Gibney in contempt of the Court's May 16, 2014, and July 30, 2014 orders and committed Dr. Gibney to the Montgomery County Correctional Facility for a period of ninety (90) days unless Dr. Gibney purged the contempt prior to that time period by paying the $500.00 sanction to Evolution's Counsel as directed by those prior court orders. (Order docketed 9/29/14). On September 30, 2014, Counsel for Evolution notified the court that he had been provided with the Five Hundred Dollar ($500.00) payment as a sanction for Counsel having had to file the Second Motion for Sanctions. Accordingly, the undersigned determined that Dr. Gibney had purged his contempt and directed the Montgomery County Correctional Facility to discharge him forthwith. (order docketed 9/30/14).

21

Appellant filed a notice of appeal on October 8, 2014. On October 10, 2014, the undersigned issued an order directing Appellant to file and serve a Concise Statement of the Errors Complained of on Appeal ("concise statement"). Appellant filed a concise statement on October 27, 2014.

## III.  ISSUES

Appellant raises the following issues on appeal:

1.  The trial court erred in not following the "5 step" procedure in a contempt finding. (See Lachat v. Hinchliffe, 769 A.2d 481 – Pa: Superior Court 2001, McMahon v. McMahon, 706 A.2d 350 – Pa: Superior Court 1998, Crislip v. Harshman, 365 A.2d 1260 – Pa: Superior Court 1976.). The immediate prison sentence on September 29 (Dkt# 159) was unreasonable and an abuse of discretion. The order for the Sept. 29, 2014 argument and hearing "if necessary" (Dkt# 154) followed from Gibney's motion for clarification (Dkt# 151).

2.  The trial court erred in not giving Gibney the opportunity to make an immediate payment of the $500 sanctions on Sept. 29 in order to avoid imprisonment (see Lachat at 489, Rhoades v. Pryce, 874 A.2d 148, 151 Pa.Super.2005 (en banc), see Hyle v. Hyle, 2005 PA Super 50 – Pa: Superior Court 2005). Judge Rogers never asked Gibney, for the record, if he even made the payment in the first place. There was no petition for contempt.

3.  The contempt finding and imprisonment were unreasonable and an abuse of discretion because Gibney did not act with wrongful intent. Gibney wrote a letter to Judge Rogers asking for postponement of the $500 sanctions payment until a final order in the action, as the initial sanctions order was interlocutory.

22

Gibney promised to pay if he did not file a timely appeal of the $500 sanctions, following a final order in this action. Judge Rogers docketed the letter as a "motion for reconsideration" and denied Gibney's request. (Dkt# 141 contains the order and the letter). There was no urgency to this $500 payment for counsel fees. Denying Gibney's request for postponement was unreasonable.

4. As Gibney had to pay the $500 sanctions in order to be released from prison, that sanctions order is now final and appealable. The $500 sanctions was unreasonable and an abuse of discretion rooted in clear errors of law. The case record leading to the $500 sanctions is reviewable by this appellate Court because it was argued by the parties and the trial court during the Sept. 29 "if necessary" argument/hearing regarding Gibney's contemptible conduct, resulting in Gibney's imprisonment on that day. Gibney's motion for summary judgment on Evolution's counterclaims (Dkt# 96), the order denying the MSJ (Dkt#114), and Gibney's motion for reconsideration (Dkt# 117) demonstrate clear errors of law. If the law had been followed with regard to material facts and summary judgment, Gibney's MSJ would have been granted. As a result, Gibney's objections to producing discovery based on the absence of material facts, the subsequent sanctions, contempt finding, and imprisonment, would not have occurred.

5. Judge Rogers stated during the Sept. 29 "if necessary" argument and hearing, prior to sentencing Gibney to prison, that Gibney had erroneously cited federal law in his objections to producing discovery. In fact, Gibney cited ample Pennsylvania law (as he did in his MSJ), including Ertel v. Patriot News Co., 674 A.2d 1038 – Pa: Supreme Court 1996. During the Sept. 29 hearing, defending his sanctions against Gibney, his contempt finding, and prison sentence, Judge Rogers stated that Gibney's reliance on Ertel was erroneous and did not support his MSJ on Evolution's counterclaims and his

23

objections to producing discovery with respect to Evolution's counterclaims. Gibney's <u>Ertel</u> citation was not erroneous and it did support his MSJ and discovery objections.

6. The trial court otherwise abused its discretion and/or erred as a matter of law in imposing sanctions, finding Gibney in contempt, and sentencing him to prison.

(Appellant's concise statement filed October 27, 2014).

## IV. DISCUSSION

Preliminarily, this court finds it important to note in this particular case that pursuant to Pennsylvania law, "a party remains bound by the Rules of Court even in the absence of counsel". *Cove Centre, Inc. v. Westhafer Construction, Inc.*, 965 A.2d 259, 262 (Pa.Super. 2009) (citing *Peters Creek Sanitary Authority v. Welch*, 545 Pa. 309, [315 n. 5,] 681 A.2d 167, 170 n. 5 (1996)). *Pro se* status confers no special benefit upon a party. "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *In re Ullman*, 995 A.2d 1207, 1211-12 (Pa.Super. 2010) (citation omitted). Moreover, while a *pro se* litigant may be entitled to some latitude, under no circumstances is it acceptable for that litigant to substitute his own version of the law for established court rules and procedures. *See* e.g. *Dr. Helicopters, LLC v.*

24

*South Whitehall Township*, 2013 WL 3960886 at *6 n.15 (Pa.Cmwlth. January 30, 2013) (unpublished memorandum opinion).

In his first three issues on appeal, Dr. Gibney complains that the undersigned erred by not 1) following a five-step procedure prior to holding him in contempt; 2) giving him the opportunity to make immediate payment to avoid imprisonment, and 3) allowing him to wait to pay the sanction until he failed to appeal or lost on appeal. In his fourth and fifth issues presented, Dr. Gibney claims that the court abused its discretion in imposing the underlying $500.00 sanction in the first instance because the court, instead, should have granted his motion for summary judgment. Dr. Gibney levels a general complaint in his sixth issue that the court erred or abused its discretion by imposing sanctions, finding him in contempt and sentencing him to prison. As these claims are intertwined, the court will address them together.[3] Dr. Gibney is mistaken and his protestations warrant no relief.

The applicable standards on review of an order finding a party in contempt are as follows. The "scope of review when considering an appeal from an order holding a party in contempt of court is narrow." *Rhoades v.*

---

[3] To the extent that Dr. Gibney is challenging the court's denial of his motion for summary judgment as premature in his fourth and fifth issues, that challenge is not yet ripe for appeal. *See e.g. National Casualty Company v. Kinney*, 90 A.3d 747 (Pa.Super. 2014) (explaining order is final and appealable if it disposes of all claims and all parties); *Bridgeport Fire Litigation*, 51 A.3d 224 (Pa.Super. 2012) (reiterating Superior Court may reach merits of appeal taken from a final order or an order certified as a final order, an interlocutory order appealable as of right, an interlocutory order appealable by permission or a collateral order). Accordingly, this court will not address that challenge herein.

25

*Pryce*, 874 A.2d 148, 153 (Pa.Super. 2005) (*en banc*) (citation omitted).[4]

The Superior Court will reverse only upon a showing of a clear abuse of discretion. *Id.* (citation omitted); *Harcar v. Harcar,* 982 A.2d 1230, 1235 (Pa.Super. 2009) (citation omitted). The Court places "great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Rhoades, supra.* A trial court "abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Habjan v. Habjan,* 73 A.3d 630, 637 (Pa.Super. 2013) (citation omitted); *Harcar, supra* at 1234. Appellate courts defer to the trial judge's credibility determinations as that court has had the opportunity to observe the witness' demeanor. *Habjan, supra* at 644 (citing *Harcar, supra* at 1236).

"Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Harcar, supra* at 1235 (citation omitted). The *Harcar* Court explained the process as follows:

> The five elements deemed essential to a civil contempt adjudication are: (1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an

---

[4] The Superior Court has noted in *dicta* "that under prevailing Pennsylvania law a civil contempt ruling with sanctions involving discovery orders remains interlocutory and not immediately appealable." *Stahl v. Redcay*, 897 A.2d 478, 487 n. 2 (Pa.Super. 2006) (comparing *Markey v. Marino*, 521 A.2d 942, 944 (Pa.Super. 1987) with *Rhoades, supra*). Because the Court may conclude that this matter involves unusual circumstances, the undersigned will address the merits.

26

adjudication. **"Fulfillment of all five factors is not mandated, however."** "[T]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard."

*Id.* at 1234-35 (citation omitted) (emphasis added).

The distinct elements which must be demonstrated by a preponderance of the evidence are: 1) that the contemnor had notice of the specific order which he is alleged to have disobeyed; 2) that the act constituting the violation was volitional, and 3) that the contemnor acted with wrongful intent. *Habjan, supra* at 637 (citing *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa.Super. 2006)); *Harcar, supra* at 1235 (citation omitted). Where the contempt proceedings are predicated on a violation of a court order that followed a full hearing, "due process requires no more than notice of the violations alleged and an opportunity for explanation and defense." *Diamond v. Diamond*, 792 A.2d 597, 601 (Pa.Super. 2002) (citations omitted). "Notice is deemed adequate when it is reasonably calculated to inform a party of the pending action and provides the party an opportunity to present objections to the action." *Pennsy Supply, Inc. v. Mumma*, 921 A.2d 1184, 1197 (Pa.Super. 2007) (citation omitted).

It is also common following an adjudication of "civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period." *Gunther v. Bolus*, 853

A.2d 1014, 1016 (Pa.Super. 2004). "The order alleged to have been violated 'must be *definite, clear, and specific* – leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct' and is to be strictly construed." *Id.* at 1017 (citation omitted) (emphasis in original); *accord Stahl, supra* at 489. (citation omitted).

In support of his objections and refusal to comply with the discovery requests and two court orders, Dr. Gibney erroneously relied upon federal court cases, including *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007), and *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008). These cases are readily distinguishable for several reasons, not the least of which is their procedural posture. Each matter was before the respective federal court on a motion to dismiss a complaint pursuant to the Federal Rules of Civil Procedure. Here, Dr. Gibney did not file preliminary objections in the nature of a motion to dismiss the counterclaims but, rather, attempted to avoid responding to discovery utilizing that standard.

Dr. Gibney also insisted on several occasions that the Pennsylvania Supreme Court has held that parties need not respond to discovery requests until the opposing party has produced evidence of material facts in support of their case. Citing *Ertel v. Patriot-News Company, supra,* Dr. Gibney has adamantly denied that he is under any obligation to comply with the court's order compelling discovery responses, that he is right and

28

that the court has a "misunderstanding of summary judgment and when it can be brought." (N.T. Hearing, 9/29/14 at 8-9). In fact, if this court had done what it should have done, according to Dr. Gibney, and granted his motion for summary judgment, he opines that his "objections to producing discovery based on the absence of material facts, the subsequent sanctions, contempt finding, and imprisonment, would not have occurred." (concise statement, filed 10/27/14, at p. 2). Not one of these cases supports Dr. Gibney's position.[5]

Assuming for the sake of argument that this court's May 16, 2014 Order is ripe for appeal,[6] the imposition of sanctions for a party's failure to comply with discovery is also subject to the trial court's discretion "as is the severity of the sanctions imposed." *Cove Centre, supra* at 261 (citations omitted). *Accord The Philadelphia Contributionship Insurance Company v. Shapiro*, 798 A.2d 781, 784 (Pa.Super. 2002) (affirming

---

[5] Demonstrating that he still does not understand the court's orders or the law, Dr. Gibney recently opined as follows:

> In its opinion, the Court (Judge Thomas Rogers) denied Gibney's MSJ on Evolution's counterclaims as "premature," (Dkt# 114) agreeing that there are no material facts but stating that Gibney should have objected to the lack of material facts and specificity with preliminary objections, not a motion for summary judgment. Also, if Gibney does not like the fact that Evolution has not produced material facts, or refuses to do so, then *Gibney has the burden of compelling Evolution to produce something he doesn't want—material facts that he did something wrong*. There is no question that this court-ordered masochism is an error of law.

(Counterclaim Defendant Leo Gibney's Opposition to Evolution's Motion to Overrule Objection to Subpoena to Third Party Healogix, filed 1/2/15, at 3) (emphasis in original).

[6] *See Stahl, supra* at 487 n. 2.

29

dismissal of claims for failing to obey orders to comply with discovery requests). As the trial court stated in *Hopkins v. Byes*, 954 A.2d 654 (Pa.Super. 2008), "[i]t has been this [c]ourt's experience that awarding attorney fees often motivate[s] the losing party to refrain from continuing contemptible conduct." *Id.* at 659 (awarding attorneys' fees as a sanction for contempt).

The Pennsylvania appellate courts have also made clear:

> [t]he trial court is responsible for overseeing "discovery between the parties and therefore it is within that court's discretion to determine the appropriate measures necessary to insure adequate and prompt discovery of matters allowed by the Rules of Civil Procedure." Discovery rulings are "uniquely within the discretion of the trial judge," and will not be reversed unless they are deemed to represent an abuse of discretion.

> \*        \*        \*        \*

> **A party's belief that discovery orders are wrong does not justify or excuse its violation of those orders.** Rather, such defiance is a direct affront to the authority of the trial court and to the integrity of the judicial system and rule of law.

> A litigant cannot be permitted to determine what constitutes discoverable information. The Pennsylvania Superior Court in addressing a similar discovery issue in *George* [*v. Schirra*, 814 A.2d 202 (Pa.Super. 2002)], expressed its reluctance "to allow a participant in a lawsuit to dictate the determination of what is, and what is not, relevant. **To allow this practice is akin to allowing a participant in a contest to referee the contest. In the contest of litigation, the judge and the judge alone, acts as the referee.**"

*Rohm and Haas Company v. Lin*, 992 A.2d 132, 143 (Pa.Super. 2010) (some citations omitted) (emphasis added).

In the instant case, this court did not abuse its discretion in awarding the Five Hundred Dollar ($500.00) in attorneys' fees as a sanction against Dr. Gibney for his repeated failure to comply with the court's discovery orders. Additionally, the undersigned provided Dr. Gibney with notice on several occasions as to the very real possibility of imprisonment if he continued to disobey the court's orders. (*See e.g.* N.T. Hearing, 12/11/13, at p. 17; December 20, 2013 order at p. 2; N.T. Hearing, 4/17/14, at p. 8; August 25, 2014 order, and September 16, 2014 order). The court also afforded Dr. Gibney several opportunities to testify and present evidence that would purportedly excuse his inability to comply with the undersigned's May 16, 2014, and July 30, 2014 orders. Not only was Dr. Gibney afforded an opportunity to be heard at the hearing on Evolution's second motion for sanctions on April 17, 2014, which resulted in the May 16, 2014 order imposing the Five Hundred Dollar ($500.00) sanction, he was also provided the opportunity to be heard at a hearing on July 11, 2014, on the third motion for sanctions based in part upon his continued failure to comply with that May 16, 2014 order.

In its August 25, 2014 order, the court deliberately provided Dr. Gibney with a staggered rule return date between his answer and the hearing date so as to afford him additional due process. Rather than take the opportunity to provide mitigating reasons as to why he should not be

31

held in contempt in an answer, Dr. Gibney chose instead to file a motion for clarification on the rule return date. Finally, again on September 29, 2014, Dr. Gibney had the opportunity to be heard in a full hearing on the rule to show cause. His defense was consistent, albeit baseless and legally unsupported. Accordingly, Dr. Gibney's complaints about due process are devoid of merit.

This court found Dr. Gibney's willful defiance of two very clear orders intentional and a direct affront to the court's authority. It is clear from the record that Dr. Gibney desires to serve as the referee in his own case, a position reserved for the trial judge. As a sanction for the finding of civil contempt, the court ordered Dr. Gibney to commitment in the county facility for a period of ninety (90) days unless he purged that contempt by paying the sanction this court originally imposed on May 16, 2014. Dr. Gibney never asserted an inability to pay. In addition, and contrary to his contention otherwise, there was no reason to ask Dr. Gibney whether he had paid the Five Hundred Dollar ($500.00) sanction when Counsel for Evolution made it clear that he had not received it. (N.T. Hearing, 9/29/14, at p. 12). Dr. Gibney had notice of the discovery sanction, was afforded several opportunities to pay the sanction and willfully refused to do so because he insisted and continues to insist that the court was wrong and he was right. His appeal warrants no relief.

32

## V.    CONCLUSION

Based upon the reasoning set forth herein, the undersigned respectfully requests that the September 29, 2014 order holding Dr. Gibney in contempt of court be affirmed.

BY THE COURT:

THOMAS P. ROGERS, J.

Copies of the above Opinion
sent on 03/24/15 to the following:
**By First-Class Mail:**
Leo Gibney, Plaintiff *Pro Se*
David J. Woolf, Esquire, Counsel for Defendant,
    Evolution Marketing Research, LLC
Dennis M. Mulgrew, Jr., Esquire, Counsel for Defendant,
    Evolution Marketing Research, LLC

Judicial Secretary

33

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

LEO GIBNEY,

        Plaintiff/ Counterclaim
        Defendant

        v.

EVOLUTION MARKETING RESEARCH, LLC

        Defendant/ Counterclaim
        Plaintiff

CIVIL ACT. NO.
2012-10933

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Leo Gibney hereby complains of the following matters in connection with the appeal of the contempt order in the above-captioned matter:

1. The trial court erred in not following the "5 step" procedure in a contempt finding. (See Lachat v. Hinchliffe, 769 A. 2d 481 - Pa: Superior Court 2001, McMahon v. McMahon, 706 A. 2d 350 - Pa: Superior Court 1998, Crislip v. Harshman, 365 A. 2d 1260 - Pa: Superior Court 1976.). The immediate prison sentence on September 29 (Dkt# 159) was unreasonable and an abuse of discretion. The order for the Sept. 29, 2014 argument and hearing "if necessary" (Dkt#154) followed from Gibney's motion for clarification (Dkt# 151).

2. The trial court erred in not giving Gibney the opportunity to make an immediate payment of the $500 sanctions on Sept. 29 in order to avoid imprisonment (see Lachat at 489, Rhoades v. Pryce, 874 A.2d 148,151 Pa.Super.2005 (*en banc*), see Hyle v. Hyle, 2005 PA Super 50 - Pa: Superior Court 2005). Judge Rogers never asked Gibney, for the record, if he even made the payment in the first place. There was no petition for contempt.

3. The contempt finding and imprisonment were unreasonable and an abuse of discretion because Gibney did not act with wrongful intent. Gibney wrote a letter to Judge Rogers asking for postponement of the $500 sanctions payment until a final order in the

1

action, as the initial sanctions order was interlocutory. Gibney promised to pay if he did not file a timely appeal of the $500 sanctions, following a final order in this action. Judge Rogers docketed the letter as a "motion for reconsideration" and denied Gibney's request. (Dkt# 141 contains the order and the letter). There was no urgency to this $500 payment for counsel fees. Denying Gibney's request for postponement was unreasonable.

4. As Gibney had to pay the $500 sanctions in order to be released from prison, that sanctions order is now final and appealable. The $500 sanctions was unreasonable and an abuse of discretion rooted in clear errors of law. The case record leading to the $500 sanctions is reviewable by this appellate Court because it was argued by the parties and the trial court during the Sept. 29 "if necessary" argument/hearing regarding Gibney's contemptible conduct, resulting in Gibney's imprisonment on that day. Gibney's motion for summary judgment on Evolution's counterclaims (Dkt#96), the order denying the MSJ (Dkt#114), and Gibney's motion for reconsideration (Dkt# 117) demonstrate clear errors of law. If the law had been followed with regard to material facts and summary judgment, Gibney's MSJ would have been granted. As a result, Gibney's objections to producing discovery based on the absence of material facts, the subsequent sanctions, contempt finding, and imprisonment, would not have occurred.

5. Judge Rogers stated during the Sept. 29 "if necessary" argument and hearing, prior to sentencing Gibney to prison, that Gibney had erroneously cited federal law in his objections to producing discovery. In fact, Gibney cited ample Pennsylvania law (as he did in his MSJ), including Ertel v. Patriot News Co., 674 A. 2d 1038 - Pa: Supreme Court 1996. During the Sept. 29 hearing, defending his sanctions against Gibney, his contempt finding, and prison sentence, Judge Rogers stated that Gibney's reliance on Ertel was erroneous and did not support his MSJ on Evolution's counterclaims and his objections to producing discovery with respect to Evolution's counterclaims. Gibney's Ertel citation was not erroneous and it did support his MSJ and discovery objections.

6. The trial court otherwise abused its discretion and/or erred as a matter of law in imposing sanctions, finding Gibney in contempt, and sentencing him to prison.

Respectfully submitted,

Leo Gibney, Pro se

2

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,
PENNSYLVANIA
CIVIL ACTION – LAW**

LEO GIBNEY

    v.

NO. 2012-10933

EVOLUTION MARKETING
RESEARCH, LLC



## ORDER

**AND NOW**, this 25th day of August 2014, a Rule is hereby entered upon the Plaintiff to Show Cause as to why the Plaintiff should not be held in contempt of this Court's Orders of May 16, 2014 and July 30, 2014. The Court hereby sets the **RULE RETURN DATE** for the purpose of Plaintiff to file his Answer as to why he should not be held for contempt, **THE ORGINAL OF WHICH SHALL BE FILED WITH THE PROTHONOTARY'S OFFICE, TWO (2) COPIES** provided to the **CHAMBERS** of the **UNDERSIGNED**, and **ONE (1) COPY to OPPOSING COUNSEL NO LATER THAN MONDAY, SEPTEMBER 15, 2014**. The Court hereby sets **ARGUMENT** and **HEARING**, if necessary, to **OCCUR** on **MONDAY, SEPTEMBER 29, 2014** at **2:00 P.M.** in **COURTROOM "H", MONTGOMERY COUNTY COURTHOUSE**, Norristown, Pennsylvania.

THE PLAINTIFF IS HEREBY ON NOTICE THAT IF THE COURT FINDS THAT PLAINTIFF IS IN CONTEMPT OF THE ORDER(S), THE COURT WILL TAKE THE APPROPRIATE ACTION TO INSURE THE

This order/judgment was docketed and sent on 08/26/2014 pursuant to Pa. R. C. P. 236.

VINDICATION OF THE AUTHORITY OF THE COURT, WHICH MAY INCLUDE IMPRISONMENT UNTIL SUCH TIME AS THE CONTEMPT IS PURGED. THEREFORE, THE PLAINTIFF IS PLACED ON NOTICE OF THE STRONG RECOMMENDATION TO OBTAIN COUNSEL. IF THE PLAINTIFF CANNOT AFFORD TO HIRE A LAWYER, THE OFFICE LISTED BELOW MAY BE ABLE TO PROVIDE PLAINTIFF WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
MONTGOMERY COUNTY BAR ASSOCIATION
100 WEST AIRY STREET (REAR)
NORRISTOWN, PA 19401
(601 279-9660, EXTENSION 201)

BY THE COURT:

THOMAS P. ROGERS, J.

Copies of the above Order
Sent on 08/25/14 to:
**By First-Class Mail:**
Leo Gibney, Plaintiff *Pro Se*
David J. Woolf, Esquire, Counsel for Defendant, Evolution Marketing Research, LLC
Dennis M. Mulgrew, Esquire, Counsel for Defendant, Evolution Marketing Research, LLC

Judicial Secretary

2

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| LEO GIBNEY, | : | |
| | : | CIVIL ACT. NO. |
| Plaintiff, | : | 2012-10933 |
| v. | : | |
| | : | |
| EVOLUTION MARKETING RESEARCH, LLC | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF LEO GIBNEY'S
## MOTION FOR CLARIFICATION OF THE COURT'S AUGUST 25, 2014 ORDER

Plaintiff, Leo Gibney, respectfully moves this Court to clarify its August 25 order (Exhibit A) threatening contempt and possible imprisonment. In support of this motion, Plaintiff avers as follows.

1. The Court accepted Plaintiff's responses in the July 30 order noted in the August 25 order.
2. Although Gibney signed his responses to the interrogatories and document requests, the Court concluded the responses were not properly verified.
3. The Court directed Gibney to provide verified responses to Evolution within 72 hours during oral argument with respect to the July 30 order.
4. Plaintiff provided verified responses to Evolution's counsel within 24 hours.
5. Plaintiff is not aware of any petition or motion for contempt filed by Evolution against Gibney.

As a result of the above, Plaintiff respectfully requests that the Court clarify what the threat of contempt and possible imprisonment is based on (see Diamond v. Diamond, 792 A.2d 597, 600 (Pa. Super 2000) For civil contempt to be found the terms of the court's order or orders violated must be "definite, clear and specific." Id. at 1210.

Leo Gibney, Pro se

September 15, 2014

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,**
**PENNSYLVANIA**
**CIVIL ACTION – LAW**

LEO GIBNEY                                                        :
                                                                 :
                                                                 :
        v.                                                       :        NO. 2012-10933
                                                                 :
EVOLUTION MARKETING                                              :
RESEARCH, LLC                                                    :

2012-10933-0159  9/29/2014 2:46 PM   # 9977020
Order
Rcpt#Z2224569  Fee:$0.00
Mark Levy - MontCo Prothonotary

**ORDER**

**AND NOW**, this 29th day of September 2014, the Court having set a Rule Return Date and Hearing to Show Cause as to why Leo Gibney should not be held in contempt of this Court's Orders directing Leo Gibney to pay Counsel fees and costs to Evolution Marketing Research, LLC's Counsel in the amount of Five Hundred Dollars ($500.00) for the filing of the Second Motion for Sanctions and the Court having held a Hearing on Monday, September 29, 2014, it is hereby **ORDERED** that **LEO GIBNEY** is **HELD IN CONTEMPT**.

**LEO GIBNEY** shall serve a period of **IMPRISONMENT** for a period of **NINETY (90) DAYS FORTHWITH** at the **MONTGOMERY COUNTY CORRECTIONAL FACILITY** unless Leo Gibney purges that contempt prior to the Ninety (90) Day period of Imprisonment by providing payment in the amount of Five Hundred Dollars ($500.00) to Evolution Marketing Research, LLC's Counsel as directed by the Court's Orders of July 30, 2014 and May 16, 2014.

**BY THE COURT:**

_____
**THOMAS P. ROGERS, J.**

This order/judgment was docketed and sent on 09/29/2014 pursuant to Pa. R. C. P. 236.

Copies of the above Order
Sent on 09/29/14 to:
**By Hand-Delivery:**
Leo Gibney, Plaintiff *Pro Se*
David J. Woolf, Esquire, Counsel for Defendant, Evolution Marketing
     Research, LLC
Dennis M. Mulgrew, Esquire, Counsel for Defendant, Evolution
     Marketing Research, LLC
**By E-Mail:**
Sean P. McGee, Assistant Warden, Montgomery County Correctional
     Facility

Judicial Secretary

2

August 8, 2014

**VIA FIRST CLASS MAIL**

The Honorable Thomas P. Rogers
Montgomery County Court House
2 East Airy Street
PO Box 311
Norristown, PA 19404-0311

  **Re: Leo Gibney v. Evolution Marketing Research, No. 2012-10933**

Dear Judge Rogers:

  I am writing in response to your order dated July 30, 2014, attached here. In your order, you directed me to pay Evolution $500 by August 8. I am asking for postponement of payment until a final order in this action.

  I have communicated to Evolution that I will appeal the order granting sanctions. However, I cannot appeal that now but must wait for the final order in this action. An interlocutory appeal is not available to me. This is also true of the orders denying my motion for summary judgment (MSJ) and motion for reconsideration. I will appeal those also.

  The Court is aware that I continue to object to this Court allowing Evolution to proceed with its counterclaims against me when this Court is aware that there are no material facts to support them. This Court is aware that not only are there no material facts, but that Evolution objects to providing material facts because I will not produce discovery first. All of this was detailed in my motion for summary judgment (Dkt#96), my motion for reconsideration (Dkt#117), as well as my objections to discovery requests.

> 5. Regarding paragraph 78, provide the names of the companies, the individuals (names and contact information), and the specific projects that they likely "would have contracted" to Evolution.
>
> **RESPONSE:**
>
>   Evolution specifically objects that Interrogatory No. 5 is overly broad, vague, and premature, in that it seeks information concerning the effects of Dr. Gibney's tortious conduct, as outlined in Evolution's counterclaims, before Dr. Gibney has permitted Evolution any discovery into either his claims or the counterclaims. Subject to and without waiving these objections, Evolution does not have this information at present, and will supplements its response when additional information is available.

1

I read Evolution's responses to my discovery requests into the record during oral argument for the sanctions. Among the frivolous claims against me is tortious interference with existing and prospective contractual relations. As just one example (all of this is in the MSJ and motion for reconsideration), above is Evolution's response to my request for material facts.

"*Overly broad and vague*" for me to ask my accusers for the names of the companies and details of the contracts with which I tortiously interfered? As if that is not enough, they will supplement their objections "*when additional information is available*." Please read this again. It is in the record. Please consider an appellate court reaction to this as that court looks for material facts for Evolution's counterclaims. The appellate court will expect that this Court finds material facts, since my MSJ and motion for reconsideration were denied. The appellate court will look to see if sanctions against me were an abuse of discretion, as I will claim.

During oral argument for sanctions, I asked the Court if the Court had been presented with any contracts with which I allegedly interfered. The Court appears to believe the question was inappropriate and/or that I was asking the Court to provide counsel. I was not asking this Court to provide Counsel.

All of Evolution's counterclaims require, by law, that they adduce <u>material facts</u> of harm. That is the law. Vague, unsupported claims will not suffice. I cited Pennsylvania law on this in my MSJ. We all know this.

As I demonstrated in my MSJ and motion for reconsideration, they have pleaded no damages. Below is Evolution's response to my request for material facts of harm. Again, they objected. They are suing me but insist I go first. In addition, they insist that the facts supporting harm caused by me are "confidential."

3. Regarding paragraph 63 and 68, provide documentation that supports the harm and loss of current and future business opportunities alleged.

**RESPONSE:**

Evolution specifically objects to engaging in further discovery, including the production of documents responsive to Document Request No. 3, until Dr. Gibney complies with his own discovery obligations. Further, to the extent that documents responsive to Document Request

2

.

No. 3 are confidential, Evolution specifically objects to producing those documents until a protective order is in place, whether by stipulation or by court order following resolution of Evolution's Motion for Protective Order. Subject to and without waiving its objections, Evolution will produce documents responsive to this request.

"Confidential?" And I am ordered to pay $500 because I object to producing discovery for claims where the alleged harm I have caused is allowed to remain a mystery. Evolution has produced nothing.

This is what an appellate court will see. Even with a PO in place, they are not waiving their objection to producing material facts to support harm and loss. Please ponder this.

I have filed a MSJ, a motion for reconsideration, endured 3 or 4 motions to compel, an equal number of motions for sanctions, and an equal number of oral arguments. And I beat the same drum about the complete lack of material facts for Evolution's counterclaims. They have deposed not a single witness in this action that is now more than 2 years old. And they objected and sought to quash subpoenas I directed to Merck employees who should be supporting Evolutions claims against me.

This is a game to Evolution. They used frivolous counterclaims against me to get me to abandon my action against them. That is abuse of process. They are winning now but they will not prevail. There is no question of this.

I respectfully ask the Court to do what the law requires. Vacate the orders denying my MSJ and motion for reconsideration and dismiss Evolution's counterclaims against me. Denying my MSJ and motion for reconsideration were errors of law. There is no question of this.

The law requires dismissal of Evolution's counterclaims. The law has not been followed. Evolution has pleaded no damages. What is there for a trier of fact to decide? According to Evolution, it's "confidential." They object to telling me. They will tell me the names of the companies and details of the contracts I tortiously interfered with *when additional information becomes available*. This is what an appellate court will see. This Court should be insulted.

I am fully prepared and eager to defend my rights. By allowing my accusers to proceed in the complete absence of material facts, this Court has denied my right to have the claims against me dismissed.

This Court, in the opinion denying my MSJ, appears to believe that if Evolution refuses to provide material facts for its claims, including harm caused by me, the burden shifts back to me—the defendant—to *compel* them to produce things I don't want. Please ponder this so that

3

the flaw in this reasoning becomes clear. Evolution objects to providing material facts for its claims against me and somehow I have more work to do to get them to properly sue me. Of course, this cannot be. The law requires dismissal in the absence of material facts for claims. The law does not require the defendant to work harder to force his accuser to support its accusations, if his accuser does not want to support them. The law requires dismissal. This is not a game.

I asked Counsel if they would agree to postpone payment of the $500 until after the final order in this action. I told them I would pay it if I did not file a timely appeal. Evolution would not agree.

Since the law requires this Court to dismiss Evolution's claims against me, the only fair thing to do with respect to the sanctions is to vacate that order as well.[1]

In any event, since I cannot appeal the sanctions order now, I am asking for postponement of payment until after the final order. You have set deadlines for the close of discovery and for the trial praecipe, all of which should occur in the next several months. I hope you will agree that there is no urgency to the payment of this $500 fine and that by simply postponing it until the final order, this matter can proceed to a final resolution, at this stage, efficiently and without undue additional burden on the parties and the Court.

Respectfully, please review my MSJ (Dkt#96) and motion for reconsideration (Dkt#117) again. Please dismiss Evolution's counterclaims, as the law requires. Courts may change an order at any time, as justice requires.

I also ask that you vacate the order granting sanctions against me for $500. If you will not, please postpone the payment due date.

Thank you for your consideration.

Leo Gibney

Pro se
August 8, 2014

Cc: Dennis Mulgrew, David Woolf

---

[1] I point out also that the initial order granting $500 sanctions ordered me to provide certain documents requested when, in addition to stating my objections, I stated that I did not have documents responsive to the requests.



# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

LEO GIBNEY     : <br>
                : <br>
       v.           :     NO. 2012-10933 <br>
                : <br>
EVOLUTION MARKETING    : <br>
RESEARCH, LLC         :

## *ORDER: PLAINTIFF/COUNTERCLAIM DEFENDANT GIBNEY'S REQUEST TO DELAY PAYMENT OF SANCTIONS UNTIL ENTRY OF A FINAL ORDER[1]*

**AND NOW,** this 11th day of August 2014, the Court having reviewed correspondence dated and mailed August 8, 2014,[2] and received on August 11, 2014 from Plaintiff/Counterclaim Defendant Leo Gibney requesting the delay of his payment of Court ordered sanctions until the entry of a final order in this case, it is hereby **ORDERED** that Plaintiff's Motion is **DENIED**.[3]

BY THE COURT:

_____ <br>
THOMAS P. ROGERS, J.

2012-10933-0141  8/11/2014 11:42 AM  # 9913486 <br>
Order <br>
Rcpt#Z2186307 Fee:$0.00 <br>
Mark Levy - MontCo Prothonotary

---

[1] Although not properly filed with the Prothonotary, the Court will treat Plaintiff/Counterclaim Defendant's correspondence as a motion for reconsideration.

[2] The Court notes payment was due on August 8, 2014, pursuant to its July 30, 2014 Order. The Court imposed sanctions as a result of Plaintiff's failure to comply with previous Court orders.

[3] The Court incorporates Plaintiff/Counterclaim Defendant's correspondence as well as the Court's previous order dated May 16, 2014, attached hereto.

**This order/judgment was docketed and sent on 08/11/2014 pursuant to Pa. R. C. P. 236.**



Copies of the above Order
Sent on 08/11/14 to:
**By First-Class Mail:**

Leo Gibney, Plaintiff *Pro Se*

David J. Woolf, Esquire, Counsel for Defendant, Evolution Marketing
 Research, LLC

Dennis M. Mulgrew, Esquire, Counsel for Defendant, Evolution
 Marketing Research, LLC

Judicial Secretary

Circulated 07/28/2015 04:07 PM



August 8, 2014

**VIA FIRST CLASS MAIL**

The Honorable Thomas P. Rogers
Montgomery County Court House
2 East Airy Street
PO Box 311
Norristown, PA 19404-0311

    **Re:    Leo Gibney v. Evolution Marketing Research, No. 2012-10933**

Dear Judge Rogers:

    I am writing in response to your order dated July 30, 2014, attached here. In your order, you directed me to pay Evolution $500 by August 8. I am asking for postponement of payment until a final order in this action.

    I have communicated to Evolution that I will appeal the order granting sanctions. However, I cannot appeal that now but must wait for the final order in this action. An interlocutory appeal is not available to me. This is also true of the orders denying my motion for summary judgment (MSJ) and motion for reconsideration. I will appeal those also.

    The Court is aware that I continue to object to this Court allowing Evolution to proceed with its counterclaims against me when this Court is aware that there are no material facts to support them. This Court is aware that not only are there no material facts, but that Evolution objects to providing material facts because I will not produce discovery first. All of this was detailed in my motion for summary judgment (Dkt#96), my motion for reconsideration (Dkt#117), as well as my objections to discovery requests.

5.    Regarding paragraph 78, provide the names of the companies, the individuals (names and contact information), and the specific projects that they likely "would have contracted" to Evolution.

**RESPONSE:**

    Evolution specifically objects that Interrogatory No. 5 is overly broad, vague, and premature, in that it seeks information concerning the effects of Dr. Gibney's tortious conduct as outlined in Evolution's counterclaims, before Dr. Gibney has permitted Evolution any discovery into either his claims or the counterclaims. Subject to and without waiving these objections, Evolution does not have this information at present, and will supplements its response when additional information is available.

1



I read Evolution's responses to my discovery requests into the record during oral argument for the sanctions. Among the frivolous claims against me is tortious interference with existing and prospective contractual relations. As just one example (all of this is in the MSJ and motion for reconsideration), above is Evolution's response to my request for material facts.

*"Overly broad and vague"* for me to ask my accusers for the names of the companies and details of the contracts with which I tortiously interfered? As if that is not enough, they will supplement their objections *"when additional information is available."* Please read this again. It is in the record. Please consider an appellate court reaction to this as that court looks for material facts for Evolution's counterclaims. The appellate court will expect that this Court finds material facts, since my MSJ and motion for reconsideration were denied. The appellate court will look to see if sanctions against me were an abuse of discretion, as I will claim.

During oral argument for sanctions, I asked the Court if the Court had been presented with any contracts with which I allegedly interfered. The Court appears to believe the question was inappropriate and/or that I was asking the Court to provide counsel. I was not asking this Court to provide Counsel.

All of Evolution's counterclaims require, by law, that they adduce material facts of harm. That is the law. Vague, unsupported claims will not suffice. I cited Pennsylvania law on this in my MSJ. We all know this.

As I demonstrated in my MSJ and motion for reconsideration, they have pleaded no damages. Below is Evolution's response to my request for material facts of harm. Again, they objected. They are suing me but insist I go first. In addition, they insist that the facts supporting harm caused by me are "confidential."

3.    Regarding paragraph 63 and 68, provide documentation that supports the harm and loss of current and future business opportunities alleged.

**RESPONSE:**

Evolution specifically objects to engaging in further discovery, including the production of documents responsive to Document Request No. 3, until Dr. Gibney complies with his own discovery obligations. Further, to the extent that documents responsive to Document Request

No. 3 are confidential. Evolution specifically objects to producing those documents until a protective order is in place, whether by stipulation or by court order following resolution of Evolution's Motion for Protective Order. Subject to and without waiving its objections, Evolution will produce documents responsive to this request.

"Confidential?" And I am ordered to pay $500 because I object to producing discovery for claims where the alleged harm I have caused is allowed to remain a mystery. Evolution has produced nothing.

This is what an appellate court will see. Even with a PO in place, they are not waiving their objection to producing material facts to support harm and loss. Please ponder this.

I have filed a MSJ, a motion for reconsideration, endured 3 or 4 motions to compel, an equal number of motions for sanctions, and an equal number of oral arguments. And I beat the same drum about the complete lack of material facts for Evolution's counterclaims. They have deposed not a single witness in this action that is now more than 2 years old. And they objected and sought to quash subpoenas I directed to Merck employees who should be supporting Evolutions claims against me.

This is a game to Evolution. They used frivolous counterclaims against me to get me to abandon my action against them. That is abuse of process. They are winning now but they will not prevail. There is no question of this.

I respectfully ask the Court to do what the law requires. Vacate the orders denying my MSJ and motion for reconsideration and dismiss Evolution's counterclaims against me. Denying my MSJ and motion for reconsideration were errors of law. There is no question of this.

The law requires dismissal of Evolution's counterclaims. The law has not been followed. Evolution has pleaded no damages. What is there for a trier of fact to decide? According to Evolution, it's "confidential." They object to telling me. They will tell me the names of the companies and details of the contracts I tortiously interfered with *"when additional information becomes available."* This is what an appellate court will see. This Court should be insulted.

I am fully prepared and eager to defend my rights. By allowing my accusers to proceed in the complete absence of material facts, this Court has denied my right to have the claims against me dismissed.

This Court, in the opinion denying my MSJ, appears to believe that if Evolution refuses to provide material facts for its claims, including harm caused by me, the burden shifts back to me—the defendant—to *compel* them to produce things I don't want. Please ponder this so that

3

the flaw in this reasoning becomes clear. Evolution objects to providing material facts for its claims against me and somehow I have more work to do to get them to properly sue me. Of course, this cannot be. The law requires dismissal in the absence of material facts for claims. The law does not require the defendant to work harder to force his accuser to support its accusations, if his accuser does not want to support them. The law requires dismissal. This is not a game.

I asked Counsel if they would agree to postpone payment of the $500 until after the final order in this action. I told them I would pay it if I did not file a timely appeal. Evolution would not agree.

Since the law requires this Court to dismiss Evolution's claims against me, the only fair thing to do with respect to the sanctions is to vacate that order as well.[1]

In any event, since I cannot appeal the sanctions order now, I am asking for postponement of payment until after the final order. You have set deadlines for the close of discovery and for the trial praecipe, all of which should occur in the next several months. I hope you will agree that there is no urgency to the payment of this $500 fine and that by simply postponing it until the final order, this matter can proceed to a final resolution, at this stage, efficiently and without undue additional burden on the parties and the Court.

Respectfully, please review my MSJ (Dkt#96) and motion for reconsideration (Dkt#117) again. Please dismiss Evolution's counterclaims, as the law requires. Courts may change an order at any time, as justice requires.

I also ask that you vacate the order granting sanctions against me for $500. If you will not, please postpone the payment due date.

Thank you for your consideration.

Leo Gibney

Pro se

August 8, 2014


Cc: Dennis Mulgrew, David Woolf

---

[1] I point out also that the initial order granting $500 sanctions ordered me to provide certain documents requested when, in addition to stating my objections, I stated that I did not have documents responsive to the requests.

4

Attachment

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
### CIVIL

LEO GIBNEY

     v.

EVOLUTION MARKETING
RESEARCH, LLC

NO. 2012-10933

:
:
:
:

### ORDER: EVOLUTION'S THIRD MOTION FOR SANCTIONS AGAINST PLAINTIFF/COUNTERCLAIM DEFENDANT LEO GIBNEY UNDER RULE 4019

**AND NOW,** this 30th day of July 2014, upon consideration of Defendant/Counterclaim Plaintiff Evolution's Third Motion for Sanctions Against Plaintiff/Counterclaim Defendant Leo Gibney Under Rule 4019 ("Motion"), the Answers to the Interrogatories and Responses made to the Request for Production of Documents by Plaintiff, a thorough review of the entire record as well as the relevant and applicable law and the Court having heard Oral Argument on July 11, 2014, it is hereby **ORDERED** that Evolution's Motion is **GRANTED in part** and **DENIED in part.**

Specifically, the Court finds as follows:

1. Plaintiff/Counterclaim Defendant Gibney has provided supplemental Answers to certain Interrogatories. The Answers were provided late and without the verification as directed by the Court's May 16, 2014

**This order/judgment was docketed and sent on 07/30/2014 pursuant to Pa. R. C. P. 236.**

Order.[1] The undersigned's May 16, 2014 Order is incorporated herein and attached hereto;

2. Plaintiff/Counterclaim Defendant Gibney has incorporated his previous objections, which the Court explained were inappropriate and in direct contravention of the Court's Order;

3. Plaintiff/Counterclaim Defendant Gibney has steadfastly refused to comply with the Court's Order directing him to pay Counsel fees and costs to Defendant/Counterclaim Plaintiff Evolution;[2] and

4. Plaintiff/Counterclaim Defendant Gibney has also erroneously demanded that this Court serve as his Counsel and provide explanations as a prerequisite to his compliance with the Court's orders.

Accordingly, it is hereby **ORDERED** as follows:

1. Defendant/Counterclaim Plaintiff's Motion to dismiss Plaintiff Leo Gibney's Complaint is **DENIED**;

2. Defendant/Counterclaim Plaintiff's Motion for a default judgment is **DENIED**;

---

[1] At Argument, the court instructed Plaintiff/Counterclaim Defendant Gibney to serve opposing Counsel with his Verification to the Answers.

[2] Once again, Plaintiff/Counterclaim Defendant Gibney is substituting his own version of the law for established rules and procedures. *See e.g. Dr. Helicopters, LLC v. South Whitehall Township*, 2013 WL 3960886 at 6 n.15 (Pa.Cmwlth. January 30, 2013). As the Pennsylvania appellate courts have made clear: "A party's belief that discovery orders are wrong does not justify or excuse its violation of those orders. Rather, such defiance is a direct affront to the authority of the trial court and to the integrity of the judicial system and rule of law." *Rohm and Haas Company v. Lin*, 992 A.2d 132, 143 (Pa.Super. 2010) (citations omitted).

3. Defendant/Counterclaim Plaintiff's Motion for an extension of the discovery period is **GRANTED** and the December 31, 2013 Discovery Management Conference Order is amended follows:

a. All written discovery, including depositions, **shall** be completed no later than Tuesday, September 30, 2014;[3]

b. All dispositive motions shall be filed of record with the Prothonotary's Office no later than Wednesday, October 15, 2014;

c. All responses to the dispositive motions shall be filed of record with the Prothonotary's Office no later than Friday, November 14, 2014; and

d. The case is to be placed on the Trial List by the signing of a Trial Praecipe within ten (10) days after said dispositive motions are decided;

4. On numerous occasions the Court has made it explicitly clear to both Plaintiff/Counterclaim Defendant and Defense Counsel that the conduct displayed in this process is unacceptable. Both Parties are on notice that any evidence, whether documents, testimony or thing, not produced in Discovery by September 30, 2014, either in whole or as part of a list **SHALL be PRECLUDED** at any trial in this matter; and

5. Plaintiff/Counterclaim Defendant Gibney has until Friday, August 8, 2014, to pay Counsel fees and costs to Defendant in the amount of

---

[3] There will be no further extensions.

3

Five Hundred Dollars ($500.00) pursuant to this Court's May 16, 2014 Order.[4]

Failure to do so will result in a **Rule to Show Cause** as to why

Plaintiff/Counterclaim Defendant should not be held in **Contempt of Court.**

**BY THE COURT:**

**THOMAS P. ROGERS, J.**

Copies of the above Order
Sent on 07/30/14 to:
**By First-Class Mail:**
Leo Gibney, Plaintiff *Pro Se*
David J. Woolf, Esquire, Counsel for Defendant, Evolution Marketing
    Research, LLC
Dennis M. Mulgrew, Esquire, Counsel for Defendant, Evolution
    Marketing Research, LLC

Judicial Secretary

---

[4] The check should be made payable to Drinker Biddle & Reath LLP and delivered to the attention of David J. Woolf, Esquire. Counsel is to notify Chambers in writing on Monday, August 11, 2014, if Plaintiff/Counterclaim Defendant Gibney fails to present the Five Hundred Dollars ($500.00) payment by end of business day on August 8, 2014.

4

Circulated 07/28/2015 04:07 PM

**IN THE COURT OF COMMON PLE~**
**PENNSYL**
**CIVIL ACTI~**

LEO GIBNEY

        v.              :        NO. 2012-10933

EVOLUTION MARKETING    :
RESEARCH, LLC          :


### ORDER:  MOTION FOR SANCTIONS AGAINST PLAINTIFF/COUNTERCLAIM DEFENDANT LEO GIBNEY UNDER RULE 4019

**AND NOW,** this 16th day of May 2014, upon consideration of Defendant's Motion for Sanctions Against Plaintiff/Counterclaim Defendant Leo Gibney Under Rule 4019 ("Motion"), the Answers to the Interrogatories and Responses made to the Request for Production of Documents by Plaintiff, and Argument heard on April 17, 2014, it is hereby **ORDERED** that Defendant/Counterclaim Plaintiff Evolution's Motion is **GRANTED in part** and **DEFERRED in part**.

Specifically, the Court finds as follows:

1.     Plaintiff/Counterclaim Defendant Gibney is in violation of the Court's December 20, 2013 Order directing him to provide complete, specific and verified Answers to certain Interrogatories and more complete, specific Responses to certain Requests for Production of Documents. (*See* ¶¶ 1, 3, 7 and 8 of the Court's Order). The undersigned's December 20, 2013 Order is incorporated herein and attached hereto;

**This order/judgment was docketed and sent on 05/19/2014 pursuant to Pa. R. C. P. 236.**

Circulated 07/28/2015 04:07 PM

2.      Instead, Plaintiff/Counterclaim Defendant Gibney has incorporated his previous objections, which the Court explained were inappropriate and asserted new objections in direct contravention of the Court's Order;

3.      Plaintiff/Counterclaim Defendant Gibney has misplaced reliance on federal court cases wherein the respective courts had granted a motion to dismiss under the Federal Rules of Civil Procedure in support of his objections and refusal to specifically respond to Defendant/Counterclaim Plaintiff Evolution's discovery requests;[1] and

4.      Plaintiff/Counterclaim Defendant Gibney has also erroneously relied on *Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038 (1996), in support of his objections and refusal to specifically respond to Defendant/Counterclaim Plaintiff Evolution's discovery requests. This Court denied Plaintiff/Counterclaim Defendant Gibney's Motion for Summary

---

[1] In support of his objections and refusal to comply, Plaintiff/Counterclaim Defendant Gibney erroneously relies upon *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), and *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). These federal court cases are readily distinguishable for several reasons, not the least of which is the procedural posture. Each matter was before the respective federal court on a motion to dismiss a complaint pursuant to the Federal Rules of Civil Procedure. Here, Plaintiff/Counterclaim Defendant Gibney did not file preliminary objections in the nature of a motion to dismiss the counterclaims but, rather, is attempting to avoid responding to discovery utilizing that standard. While a *pro se* litigant is entitled to some latitude, under no circumstances is it acceptable for that litigant to substitute his own version of the law for established rules and procedures. *Dr. Helicopters, LLC v. South Whitehall Township*, 2013 WL 3960886 at *6 n.15 (Pa.Cmwlth. January 30, 2013). "[A] party remains bound by the Rules of Court even in the absence of counsel". *Cove Centre, Inc. v. Westhafer Construction, Inc.*, 965 A.2d 259, 262 (Pa.Super. 2009). *Pro se* status confers no special benefit upon a party. "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *In re Ullman*, 995 A.2d 1207, 1211-12 (Pa.Super. 2010) (citation omitted).

2

Circulated 07/28/2015 04:07 PM

Judgment without prejudice as premature because the relevant discovery has yet to be completed.[2] Plaintiff/Counterclaim Defendant Gibney's failure to comply with the Court's Order has only prolonged this litigation.

Accordingly, it is hereby **ORDERED** as follows:

1.     Plaintiff/Counterclaim Defendant's previous objections to Interrogatories 1, 3, 8, 9, 10, 11 and 12 are stricken. Plaintiff/Counterclaim Defendant **SHALL** provide specific, complete and verified Answers to these Interrogatories or risk sanctions upon application, including but not limited to dismissal of the wrongful termination claims, a default judgment on the counterclaims as well as an award of reasonable costs and fees;

2.     Plaintiff/Counterclaim Defendant's previous objections to Defendant's Request for Production of Documents Nos. 2, 3, 4, 5, 6, 7, 10, 15, 16, 18(b)(c), 19 as to 18(b)(c)(d), 20(c)(d)(e) **only**, 21 as to 20(c)(d)(e) **only**, 22, 23, 24, 25, 26, 29, 30, 32, 33, 34, 36, 39, 40, 41, 42 are stricken. Plaintiff/Counterclaim Defendant **SHALL** provide all relevant documents in his possession, whether hard copies or electronic copies, or risk sanctions upon application, including but not limited to dismissal of the wrongful termination claims, a default judgment on the counterclaims as well as an award of reasonable costs and fees. In the interest of fairness, where compliance with a specific document request would result in voluminous production, a list

---

[2] The standard for summary judgment upon which Plaintiff/Counterclaim Defendant Gibney relies espoused by the Pennsylvania Supreme Court in *Ertel, supra* does not apply until after the close of relevant discovery. Plaintiff/Counterclaim Defendant Gibney is attempting to circumvent the Pennsylvania Rules of Civil Procedure regarding discovery based upon a legal standard applicable at the summary judgment stage. Again, he is substituting his own version of the law for established rules and procedures. *See Dr. Helicopters, supra.*

3

Circulated 07/28/2015 04:07 PM

specifically identifying the documents may be substituted. Upon receipt of any such list, Defendant has the burden to seek clarification if necessary;

3. As it relates to Defendant's Request for specific sanctions in this matter, the Court **GRANTS** the Motion **in part**. Specifically, the Court hereby **ORDERS** Plaintiff/Counterclaim Defendant to pay Counsel fees and costs to Defendant for the filing of this second Motion for Sanctions in the amount of Five Hundred Dollars ($500.00);

4. On numerous occasions the Court made it explicitly clear to both Plaintiff/Counterclaim Defendant and Defense Counsel that the conduct displayed in this process thus far is unacceptable. The Court has now twice explained to Plaintiff/Counterclaim Defendant what is expected in response to discovery requests. Both Parties are also on notice that failure to timely produce evidence requested by either Party in discovery will result in the preclusion of that evidence at trial;

5. As it relates to those Interrogatories that the Court directed more specific Answers and those Requests for Production of Documents in which the Court directed more specific Responses, Plaintiff/Counterclaim Defendant shall comply in this regard **within Twenty (20) Days of the date of this Order**.

BY THE COURT:

THOMAS P. ROGERS, J.

4

Circulated 07/28/2015 04:07 PM

Copies of the above Order
Sent on 05/16/14 to:
**By First-Class Mail:**
Leo Gibney, Plaintiff *Pro Se*
David J. Woolf, Esquire, Counsel for Defendant, Evolution Marketing
    Research, LLC
Dennis M. Mulgrew, Esquire, Counsel for Defendant, Evolution
    Marketing Research, LLC

Judicial Secretary

## IN THE COURT OF COMMON PLEAS
### PENNSYLV
### CIVIL ACTION – LAW

LEO GIBNEY                          :
                                    :
v.                                  :          NO. 2012-10933
                                    :
EVOLUTION MARKETING                 :
RESEARCH, LLC                       :

### ORDER: MOTION FOR SANCTIONS AGAINST
### PLAINTIFF/COUNTERCLAIM DEFENDANT LEO GIBNEY
### UNDER RULE 4019

**AND NOW,** this 20th day of December 2013, upon consideration of Defendant's Motion for Sanctions Against Plaintiff/Counterclaim Defendant Leo Gibney Under Rule 4019 ("Motion"), the Answers to the Interrogatories and Responses made to the Request for Production of Documents by Plaintiff, and Argument heard on Wednesday, December 11, 2013, it is hereby **ORDERED** as follows:

1. Defendant shall provide complete and verified Answers to Interrogatories 1, 3, 8, 9, 10, 11 and 12 in accordance with the Pennsylvania Rules of Civil Procedure;

2. As it relates to Defendant's Interrogatory No. 2, it is **DENIED**, as the Court finds that it is overly broad and vague;

3. As it relates to Defendant's Request for more complete Responses to Defendant's Request for Production of Documents, it is **GRANTED** with respect to Request Nos. 2, 3, 4, 5, 6, 7, 10, 15, 16, 18(b)(c), 19 as to 18(b)(c)(d), 20(c)(d)(e) **ONLY**, 21 as to 20(c)(d)(e) **ONLY**,

This order/judgment was docketed and sent on 12/23/2013 pursuant to Pa. R. C. P. 236.

Circulated 07/28/2015 04:07 PM

22, 23, 24, 25, 26, 29, 30, 32, 33, 34, 36, 39, 40, 41, 42;

4.    As it relates to Defendant's Request for more complete Responses to Defendant's Request for Production of Documents, it is **DENIED** with respect to Request Nos. 8, 9, 18(a), 19 as it relates to 18(a);

5.    Defendant's Request for more complete Responses as it relates to Request Nos. 28 and 35 were withdrawn by Defendant at the time of Argument;

6.    As it relates to Defendant's Request for specific sanctions in this matter, it is **DEFERRED**. Specifically, the Court defers the issue regarding Sanctions without prejudice to apply Sanctions both to Plaintiff and Defendant's Counsel for their actions in this matter should further conduct occur in future issues warranting Sanctions;

7.    At the time of the Argument, the Court made it explicitly clear to both the *Pro Se* Plaintiff and Defense Counsel that the conduct displayed in this process thus far is unacceptable. The Court has now explained to Plaintiff what is expected in response to discovery requests and the actions by Defense Counsel at times have been unacceptable "gamesmanship". The Undersigned has no objection, and it has demonstrated in the past, in other matters, to impose Sanctions, Contempt and if necessary, imprisonment in order to purge the Contempt;

8.    As it relates to those Interrogatories that the Court directed more specific Answers and those Requests for Production of

2

Documents in which the Court directed more specific Responses, Plaintiff

shall comply in this regard **within Thirty (30) Days of the date of this**

**Order** and in accordance with the Pennsylvania Laws of Civil Procedure.

**BY THE COURT:**

THOMAS P. ROGERS, J.

Copies of the above Order
Sent on 12/20/13 to:
**By First-Class Mail:**
Leo Gibney, Plaintiff *Pro Se*
David J. Woolf, Esquire, Counsel for Defendant, Evolution Marketing
    Research, LLC
Dennis M. Mulgrew, Esquire, Counsel for Defendant, Evolution
    Marketing  Research, LLC

Judicial Secretary

3